**State of Vermont v. Whitingham School Board, et al.**

[410 A.2d 996]

No. 273-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed December 18, 1979

16

*M. Jerome Diamond,* Attorney General, and *James S. Suskin* and *Elizabeth Grant Rome,* Assistant Attorneys General, Montpelier, for Plaintiff.

*John S. Burgess,* Brattleboro, and *Richard F. Taylor* (On the Brief), Middlebury, for Defendants.

**Barney, C.J.** This is an action brought by the Attorney General on behalf of the State of Vermont for claimed violations of the Fair Employment Practices Act, 21 V.S.A. §§ 495–495e. Penalties under the statute are civil, as are the enforcement procedures. The Vermont statute is patterned on federal law, Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U.S.C. 2000e–2000e-17.

This action relates to the failure of the defendant school board to hire a certain female applicant for a teaching vacancy in its system, hiring a male candidate instead. The lower court issued an order requiring the school board to hire the applicant and pay damages for lost compensation. Damages were also awarded to the State of Vermont for costs of investigation and attorneys' services.

The Whitingham School District is one of the school districts making up the membership of the Windham Southwest Supervisory Union. The Superintendent of Schools, Clarence G. Truesdell, was employed by the Whitingham School District and the other member districts acting through their supervisory union. Under the provisions of 16 V.S.A. § 242, Truesdell, as superintendent, acts as the chief executive officer for each of the duly elected school boards he serves. His duties include recommending that "the school board employ or dismiss persons as in his judgment is necessary to carry out the work of the school district." 16 V.S.A. § 242(3).

The applicant, Ms. Herbst, had been employed as a permanent substitute teacher in the Whitingham School, a twelve grade school. This was her first teaching experience. She is a graduate of the University of Pennsylvania, with a master's degree in elementary education from New York University. Her duties at Whitingham School included one month as sole teacher in the third grade, duties as a second teacher in fourth, fifth or sixth grade classrooms, and, for nearly half of her time, substituting in the high school.

During that year, Ms. Herbst was told that, due to budget cuts, the position of permanent substitute would not be renewed for the following year. Two positions were open in the

elementary school division, however, one in the second grade and one in the sixth grade. She had been told by defendant Wayne Stacy, principal of the Whitingham School, that she could apply and would be considered for any open position in the school. She was interviewed by defendant Truesdell. Truesdell submitted her name to the School Board and she was interviewed by the Board. She informed them that she was primarily interested in the sixth grade position. Two men were present to be interviewed for the sixth grade opening as well. One of them was offered the position.

The Board considered Ms. Herbst qualified for the sixth grade position. The chairman of the School Board told Ms. Herbst that she was a close second in the employment decision. As it happened, the chosen candidate did not accept the position. The Board, instead of hiring Ms. Herbst, declared the position open again. She was told that she could reapply, which she did.

At the Board meeting a candidate other than Ms. Herbst was hired. He was male and had taught for three years in the elementary grades in Shaftsbury, Vermont. He had teaching experience in mathematics, and had taught at the junior high school level in Baltimore, Maryland, for one year.

After Ms. Herbst was informed that she had not been selected for the teaching position, she ultimately contacted the Civil Rights Division of the Attorney General's Office. This division has the responsibility for referrals from the Equal Employment Opportunity Commission under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e) and (d) ; 21 V.S.A. § 495b. This suit alleging discrimination on the basis of sex followed.

██ An examination of the findings and conclusions of law in this case reveals that the trial court fully understood this to be a case of first impression in this state, and the record reflects the care and attention it gave it. The critical questions are whether or not the plaintiff established a prima facie case of discrimination, and, if so, was the defendant employer's evidence sufficient to establish some legitimate nondiscriminatory reason for the refusal to hire. The legal pattern to be followed derives from *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 802–04 (1973).

■ The School Board concedes that the prima facie burden on the plaintiff is a relatively light one, and does not contend that it was not met. To paraphrase the burden as set out in *McDonnell Douglas, supra,* in terms of sexual discrimination, *Jacobs* v. *Martin Sweets Co.,* 550 F.2d 364 (6th Cir.), *cert. denied,* 431 U.S. 917 (1977), the plaintiff must establish that the one discriminated against belongs to a protected minority (which includes sexual classification, 21 V.S.A. § 495); that she applied for and was qualified for a job for which the employer was seeking applicants; that, despite her qualifications, she was rejected; and that after the rejection, the position was still open and the employer continued to seek applicants having qualifications like those of the person rejected.

Once the prima facie case is established, it is then the employer's burden to rebut that case by a showing that the employment decision was based on a legitimate consideration not condemnable as discriminatory under the law. Should that be accomplished the plaintiff, in turn, must be afforded an opportunity to show that the justification put forth is mere pretext. If, in such circumstances, the plaintiff cannot carry this latter burden, the refusal to hire must stand. *Furnco Construction Corp.* v. *Waters,* 438 U.S. 567, 577–78 (1978).

The defendants have not challenged the application of the *McDonnell Douglas* test to this case, nor have they argued that the evidence does not support the trial court's conclusion that a prima facie case was made out. Rather they base this appeal on the contention that the trial court erred when it found that the prima facie case had not been rebutted. The trial court's determination turned on the asserted failure of the defendants to advance a legitimate reason for failing to offer Ms. Herbst the position before reopening applications. The defendants argue that this reopening is not the crucial issue and that, even so, the reopening was based on legitimate, nondiscriminatory considerations.

■ In looking to the reopening of applications as the critical act, the trial court treated as irrelevant the facts articulated by the defendants as legitimate, nondiscrimina-

tory reasons for hiring a candidate other than Ms. Herbst. Those facts included the comparison of the background and experience of Ms. Herbst with that of the candidate who was hired. *McDonnell Douglas* speaks in terms of a "legitimate, nondiscriminatory reason for the employee's rejection." *Supra*, 411 U.S. at 802. We see no reason to read that language to exclude from consideration the evidence of comparative evaluation offered by the defendants.

The plaintiff cites *Weiner* v. *County of Oakland*, 13 Emp. Prac. Dec. ¶ 11,346 (E.D. Mich. 1976), to support the trial court's restricted view of the defendants' explanation. That citation is inapposite. The *Weiner* court did not exclude the relative merits of the candidates from consideration; it concluded that the explanation was a mere pretext. *Id.* at 6150.

The evidence shows that after applications were reopened Superintendent Truesdell again submitted Ms. Herbst's application as a qualified candidate. Until the subsequent board meeting at which the other candidate was selected, Ms. Herbst had not been eliminated. The conclusion is inescapable that until that time she had not been rejected within the meaning of *McDonnell Douglas*. Cf. *East* v. *Romine, Inc.*, 518 F.2d 332, 339–40 (5th Cir. 1975) (plaintiff's weak employment record insufficient consideration, must be compared to the records of employee hired).

The trial court therefore erred when it excluded from consideration as irrelevant the Board's explanation. The Board indicated that the qualifications of the candidate who was hired were superior to those exhibited by Ms. Herbst, particularly in terms of its concern for the teaching of math and the transition of students from sixth to seventh grade. Such considerations accord with the duty of such a board to make its hiring decisions consonant with its judgment as to the maximum benefit to the school district. The fact that the candidate hired possessed qualifications which were, in the Board's view, superior to Ms. Herbst's qualifications is the most basic legitimate nondiscriminatory consideration for a hiring decision. See *Davis* v. *Weidner*, 596 F.2d 726, 730 (7th Cir. 1979) (defendant may show in rebuttal that plaintiff's rejection was due to a relative lack of qualification). Once that evidence had been admitted, the trial court's attention

should have focused on the final portion of the *McDonnell Douglas* analysis: whether the basis asserted for the decision was a mere pretext for impermissible discrimination. *Furnco Construction Corp.* v. *Waters, supra,* 438 U.S. at 577–78. The cause must be remanded for a new hearing and evaluation of the evidence introduced in accordance with the *McDonnell Douglas* analysis as here made applicable to this case.

Ms. Herbst made use of statistical evaluation of the ratio of male to female teachers in the Whitingham school as evidence of discriminatory animus. Since the proper role of statistics as proof of discriminatory motive is an issue which is likely to recur on remand, it seems appropriate to comment thereon.

Statistics of this nature, while they can be revealing evidence, require cautious handling. The evidence showed that in the relevant years 80% of Vermont elementary teachers and 40% of Vermont secondary teachers were women while only 43% of Whitingham elementary teachers and only 29% of Whitingham secondary teachers were women. But there were only seven teachers at the elementary level and twenty-one at the secondary level in Whitingham. The small number of teachers involved means that the employment of a male teacher in place of a female teacher, or the reverse, significantly alters the ratio. Statistics drawn from such a small total are of little probative value. Compare *Morita* v. *Southern California Permanente Medical Group,* 541 F.2d 217, 220 (9th Cir. 1976), *cert. denied,* 429 U.S. 1050 (1977) (sample of eight insignificant) with *International Brotherhood of Teamsters* v. *United States,* 431 U.S. 324, 337, 339–40 (1977) (pervasive statistical disparity decisive, sample 6,472). Moreover, the trial court reported that the evidence was not sufficient for it to determine which of the teachers were hired after 21 V.S.A. §§ 495–495e became effective. See *McDonnell Douglas Corp.* v. *Green, supra,* 411 U.S. at 805 n.19. For these reasons, this evidence is of little, if any, value.

The policy of 21 V.S.A. §§ 495–495e is to prevent or correct the use of gender in employment decisions where it is not a bona fide occupational qualification. The application of a remedy is conditioned on proving that such an improper

basis underlay the decision challenged. Here the trial court excluded from consideration the defendants' articulation of legitimate, nondiscriminatory reasons for the hiring decision and as a result did not reach the question which must finally determine this litigation: whether the defendants' justification for their choice was based on proper, good faith concerns or was a mere pretext by which an improper, discriminatory basis was obscured.

*The judgment in favor of Wayne Stacy is affirmed; the judgments against Clarence G. Truesdell and the Whitingham School Board are reversed and remanded for further proceedings consistent with this opinion.*