Kathryn W. COBB

v.

**DUFRESNE–HENRY, INC.**

Civ. No. 83–448.

United States District Court,
D. Vermont.

March 1, 1985.

Emily Joselson, and Peter Langrock, Langrock, Sperry, Parker & Wool, Middlebury, Vt., for plaintiff.

J. Garvan Murtha, Kristensen, Cummings, Murtha & Stewart, P.C., Brattleboro, Vt., for defendant.

### INTRODUCTION

BILLINGS, District Judge.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. 2000e–5(f), on account of sexual harassment in employment, and pursuant to the Vermont Fair Employment Practices Act, 21 V.S.A. § 495(b). On August 4, 1983, the Equal Employment Opportunity Commission issued plaintiff a notice of right to sue.

### FACTS

The defendant is an engineering firm with its principal office in Springfield, Vermont, and employs approximately ninety persons, of which ten to fifteen are female. On June 19, 1982, Robert Dufresne, a founder of the corporation, reassumed the president's office, and office of chief executive officer, after a period of time in which another management team was in charge of the daily operations of the company. The plaintiff was employed by defendant at its Springfield office, commencing October 5, 1981, and terminating on August 11, 1982, as a clerical supervisor, her final salary being at the rate of $16,000 per year.

As of June, 1982, the defendant found no fault with the plaintiff's technical work, although there had been concerns about her attitude and her association with other employees. There were at least two incidents which caused the president of the corporation to develop doubts about her veracity. As of June, 1984, the plaintiff's immediate supervisor was changed and Andrew Coutermarsh was designated the personnel coordinator and thus became plaintiff's immediate supervisor, or superior.

In early August, 1982, Robert Dufresne prepared and designed a poster, or flyer, to be distributed throughout the company announcing the annual company picnic, and it was posted in the Springfield office. The poster included, among other things, a notation to "bring your own bathing suits (women, either half)". (Plaintiff's exhibit 4.) One of the employees supervised by the plaintiff read it and was offended by it. She brought the poster to the attention of the plaintiff, who was likewise offended, and said: "Maybe it constitutes sexual harassment" and she immediately telephoned the Civil Rights Division of the

Vermont Attorney General's office. Following that conversation the plaintiff typed a memorandum addressed to her immediate superior, the memo being as follows:

To: Andrew Coutermarsh Personnel Coordinator,

From: Kathryn W. Cobb

Date: August 9, 1982

"In connection with the attached communication regarding the firm's annual picnic, on behalf of myself and those whose signatures appear below, I respectfully request that you convey to Robert J. Dufresne, president of Dufresne-Henry, Inc., and any others responsible for this communication, that we find the wording 'bathing suits—women either half' to be offensive, and to constitute an incident of sexual harassment. We request the notice be removed from bulletin boards throughout the company where it has been posted, and replaced with a notice that does not contain this offensive phrase."

The memorandum was signed by Kathryn W. Cobb and Elizabeth C. McKnight, plaintiff's former supervisor, and Janet Cody, an employee supervised by plaintiff, and the one who had brought the poster to the attention of plaintiff.

Just before twelve noon on August 9th, plaintiff stopped her supervisor, also the personnel and affirmative action coordinator, and stated that she was angry about the poster, that it was sexual harassment and that she was going to do something about it. Mr. Coutermarsh back-pedalled on the issue, and indicated that plaintiff would have to do as she felt. A little later plaintiff put on Coutermarsh's desk the prepared memorandum, indicating at the time that she was sorry to have to involve him, but she must do it. He read the memorandum at approximately 2:00 p.m. He then contacted plaintiff, in the presence of Elizabeth McKnight, and returned the memo to plaintiff, asking whether she really wanted to do this, and whether she was aware of and prepared to take the consequences. Plaintiff was angry. Later, Coutermarsh came back to plaintiff and

said he would give the memorandum to Robert Dufresne, the president. The plaintiff, although then calm, said it was too late and refused to return the memo.

On August 10, 1982, plaintiff called the president, Robert Dufresne, and asked to see him. At 1:00 p.m. plaintiff and Dufresne met in his office, and she expressed her concern over the poster, although she did not bring the memorandum with her. She indicated that the poster was offensive, degrading, and in poor taste. Dufresne, who thought the poster was humorous, was surprised, but he was extremely polite, apologized and said that he had not meant to offend anyone, and suggested three alternative courses of action:

1. Remove and replace the poster, excising the offensive material;

2. Circulate a company-wide retraction; or

3. Forget the whole matter.

Plaintiff understood at that time that Mr. Dufresne did not mean to offend anyone, and so agreed that it was best to forget the matter since plaintiff thought this was one incident, and did not constitute sexual harassment. Plaintiff then returned to her workplace and conversed with other employees, explaining the incident and conveying Mr. Dufresne's apologies.

During the afternoon, Mr. Dufresne heard from at least two other employees that the plaintiff was using the term "sexual harassment." As a result, Dufresne called plaintiff into his office at approximately 4:30 p.m. and asked her if she had accused him of sexual harassment, and whether she had used the term. Plaintiff denied that she had used the term, and denied accusing Dufresne of any such conduct, and said she did not know where the term came from, and was surprised by the inquiry. The meeting lasted a very short time.

Early on August 11, 1982, Dufresne met with Coutermarsh and asked if he knew anything about the incident and Coutermarsh told him about the memorandum, the use of the term "sexual harrassment" included therein, and about his conversations with plaintiff on August 9, 1982. Dufresne then told Coutermarsh that he was going to call plaintiff again to his office that morning, and wanted Coutermarsh present and he was again going to inquire if she had used the term "sexual harrassment" and indicated that if she lied to him he would probably fire her. At a little after 8:00 a.m. on August 11, 1982, plaintiff, Coutermarsh and Dufresne met in the latter's office. Dufresne then informed plaintiff that he had information indicating that not only was she using the term "sexual harrassment" but that she was circulating a memoranda or petition containing the term. Plaintiff again denied using the term, despite Coutermarsh indicating at the time that he had seen the memoranda with the term therein. Dufresne said that the matter could then be solved by plaintiff showing him the memoranda, and plaintiff then said she didn't have the memoranda and that it had been destroyed, but that she could repeat it orally, which she proceeded to do, but leaving out the term "sexual harrassment." (The memoranda subsequently surfaced as a result of an Unemployment Compensation Commission hearing regarding plaintiff's former supervisor, and as indicated aforesaid, the term was contained therein.)

Dufresne then said to plaintiff that she was lying and that he could stand a feminist and even an antagonist, but not a liar. Plaintiff denied the accusation and launched into a tirade that no one wanted her in the company; that this was what women have to put up with, and that she didn't have to put up with it. Dufresne indicated that she was correct. Plaintiff then asked if she was fired and Dufresne said yes.

Plaintiff left, and that same day drove to Montpelier to file a charge of sexual harassment with the Vermont Attorney General's office. On August 30, 1982, plaintiff signed the charge, (plaintiff's exhibit 1), wherein she stated under oath that she again denied using the term sexual harassment, despite the fact that at trial she testified that she admitted using the

term to Dufresne. Further, at trial, she claimed that she did not know the reason why she was fired, whereas in her sworn harassment charge she stated that Dufresne stated that his reason for firing was "that he could stand a feminist, even an antagonist, but not a liar." The Court finds that plaintiff was fired for lying to Mr. Dufresne about whether she had used the term "sexual harassment" in connection with the offensive language on the poster.

## DISCUSSION

■ The standards and burdens of proof applicable under Title VII employment discrimination cases were set forth by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In cases involving allegation of retaliatory discharge, it is now well settled that the plaintiff has the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. If plaintiff succeeds in proving his or her prima facie case, the burden of production of evidence then shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for the alleged retaliatory conduct.[1] Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See Burdine, supra,* and *McCluney v. Joseph Schlitz Brewing Company*, 728 F.2d 924 (7th Cir.1984). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093.

■ In an action alleging retaliatory discharge, a plaintiff must establish her prima facie case by proving that she was discharged for conduct protected by Title VII. *Pouncy v. Prudential Insurance Company of America,* 668 F.2d 795, 798 (5th Cir.1982). Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes plaintiff's evidence, and if the employer is silent in the face of the presumption, the Court must enter judgment for the plaintiff, because no issue of fact remains in the case. *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094.

■ To rebut the presumption raised by the plaintiff's prima facie case, the defendant is not required to prove that it did not illegally discriminate in discharging the plaintiff. The defendant need only articulate legitimate, non-discriminatory reasons. The defendant need not persuade the Court that it was actually motivated by the proffered reasons—it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

■ Once defendant has successfully articulated legitimate, non-discriminatory reasons for the discharge, the burden of persuasion falls back on the plaintiff to prove the reasons given by the defendant are a mere pretext for discrimination. In retaliatory discharge cases a plaintiff must prove, through admissible evidence presented at trial:

(I) That he or she was engaged in an activity protected by Title VII;

(II) That he or she was discharged, and

(III) That there was a causal connection between the participation in the

---

**1.** Plaintiff correctly asserts that where a Title VII claimant establishes discriminatory discharge by direct evidence, and the Court accepts that evidence as credible, the ultimate issue of discrimination is proved and the Court need not pursue the *McDonnell Douglas* analysis. *Bell v.*

*Birmingham Linen Service,* 715 F.2d 1552, 1557 (11th Cir.1983). This standard, while correct, is inapplicable in this case, as there is little, if any, credible direct evidence that plaintiff was fired for stating that the poster amounted to sexual harassment.

protected activity and the discharge.

■ If defendant challenges causation, either by introducing evidence of no causal link, or of other cause, the burden is on the plaintiff to show that, "but for" the protected activity, no action would have taken place. That is, the employee need not prove that her activity was the sole basis for the employer's action, but the employee must prove that "but for" the activity, he or she would not have been fired. *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). If the defendant fails to persuade the fact finder to dismiss the action for lack of a prima facie case at the close of the plaintiff's evidence, and if the defendant goes forward and offers evidence of the reason for the plaintiff's dismissal, the fact finder must decide the ultimate question of discrimination *vel non. McCluney, supra,* at 926.

■ In addition to charges brought under Title VII, plaintiff's complaint alleges that defendant's actions violated the Vermont Fair Employment Practices Act, Title 21, V.S.A. § 495(a)(5). The Vermont statute is patterned on Title VII, and the legal analysis to be followed derives from *McDonnell Douglas Corporation v. Green, supra. See State of Vermont v. Whitingham School Board, et al,* 138 Vt. 15, 410 A.2d 996 (1979). The standards and burdens of proof under state law are identical to those existing under federal law.

In the absence of a contract of employment, where employment is terminable at will, an employer may fire an employee at any time. *Jones v. Keogh,* 137 Vt. 562, 409 A.2d 581 (1979).

In this case, as in any case, the credibility of a witness and the worth of the evidence is for the trier of fact to determine.

■ From the credible evidence in this case, the defendant has articulated legitimate, non-discriminatory reasons and business objectives for terminating plaintiff, in that plaintiff deliberately lied, and the plaintiff has failed to show that the legiti-

mate, non-discriminatory reasons articulated by defendant were a mere pretext for discrimination. Plaintiff in the case at bar has failed to satisfy her burden of persuading the Court that defendant intentionally discriminated against her.

■ The defendant is entitled to attorney's fees if the Court finds that the plaintiff's action was frivolous. 42 U.S.C. § 2000e–5(f)(1), (K). In assessing the factors for determining whether plaintiff's claims were frivolous, the letter finding that reasonable cause exists to believe that the charges are true, issued by the Equal Employment Opportunity Commission, must be considered, as well as subjective bad faith, and in this case the Court finds that the plaintiff's claim was not frivolous, and defendant is not entitled to any attorney's fees. *See Badillo v. Central Steam and Wire Company,* 717 F.2d 1160 (7th Cir.1983). *See also Christiansburg Garment Co. v. E.E.O.C.* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); *Carrion v. Yeshiva University,* 535 F.2d 722, 727 (2d Cir.1976).

Judgment is entered for the defendant. SO ORDERED.