# Nancy Graff v. Milton Eaton, Individually and as Secretary of Vermont Agency of Development and Community Affairs, and State of Vermont

[598 A.2d 1383]

No. 88-146

Present: Allen, C.J., Peck and Gibson, JJ., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed August 30, 1991

*William W. Pearson, John H. Tarlow* and *Andre D. Bouffard* of *Downs Rachlin & Martin*, Burlington, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, *Richard W. Norton*, Special Assistant Attorney General, Rutland, and *Geoffrey A. Yudien*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

**Gibson, J.** Plaintiff appeals from a jury determination that defendants did not discriminate against her on the basis of gender when she was not hired on a flextime schedule as editor of *Vermont Life* magazine. We reverse and remand for a new trial.

Plaintiff was hired as acting editor of *Vermont Life* in June 1983, shortly after the acrimonious dismissal of the prior editor. She began her editorship on a part-time basis, but it gradually evolved into a full-time commitment. Pleased with her performance as acting editor, then Secretary of the Agency of Development and Community Affairs, Milton Eaton, encouraged plaintiff to apply for the permanent position. At first, plaintiff declined to do so, citing her desire to care for her infant son; eventually, she changed her mind. The *Vermont Life* advisory board found plaintiff to be the most qualified candidate, and Eaton offered her the job of permanent editor.

Plaintiff conditioned her acceptance on the State giving her a flexible work schedule. Although a certain degree of flexibility was inherent in the editor's position, a flextime schedule had never been officially sanctioned for any of the previous editors, all of whom had been men. Eaton refused to grant plaintiff a flextime schedule, stating that it was inappropriate in light of the recent managerial instability following the prior editor's dismissal. At one point during the discussions, plaintiff claims Eaton stated that if he gave her flextime, every female state employee with small children would also want a flexible schedule. Eaton testified that he did not recall making the remark. Because the conflict over flextime was never resolved, plaintiff never accepted the State's offer. Eventually, a male was chosen as the magazine's editor and no flextime schedule was provided.

Plaintiff filed suit against Milton Eaton, individually and in his representative capacity, the Vermont Agency of Development and Community Affairs, and the State of Vermont, claiming that, in violation of Vermont's Fair Employment Practices Act, 21 V.S.A. §§ 495–496, the Agency refused to hire her on a flextime schedule because of prohibited sex stereotyping. Fol-

lowing a two-week trial, the jury returned a verdict for defendants. On appeal, plaintiff claims that (1) the jury instructions improperly allocated the burdens of proof, and (2) defendants' closing argument was improper and prejudicial.

Plaintiff first contends that the trial court erred by failing to instruct the jury that once a plaintiff proves that gender was a motivating factor in the employment decision, an employer may avoid liability only by proving that it would have made the same decision even if it had not taken the plaintiff's gender into account.[1] We agree and conclude that the omission requires that we reverse and remand the case.

■ The Fair Employment Practices Act, which makes it unlawful for an employer "to discriminate against any individual because of [her] . . . sex," 21 V.S.A. § 495(a)(1), is patterned on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, *State v. Whitingham School Board*, 138 Vt. 15, 17, 410 A.2d 996, 997 (1979); "[t]he standards and burdens of proof under state law are identical to those existing under federal law." *Cobb v. Dufresne-Henry, Inc.*, 603 F. Supp. 1048, 1053 (D. Vt. 1985). Nevertheless, in contrast to the federal act,[2] jury trials are permitted in actions under the Vermont act; therefore, we need not follow every nuance of federal court pronouncements on Title VII in FEPA actions. See, e.g., *Stork v. International Bazaar, Inc.*, 54 Wash. App. 274, 282–83, 774 P.2d 22, 26–27

---

[1] We reject defendants' contention that plaintiff's objection to the jury instructions was not sufficiently distinct to preserve her argument concerning the proper placement of the burden of proof in "mixed-motive" cases—cases where there is evidence that both legal and illegal motives factored in the employment decision. In her objection to the instructions at trial, plaintiff specifically cited a mixed-motive case and referred to her trial memorandum, which addressed the mixed-motive issue.

[2] The consensus has been that there is no right to trial by jury under Title VII because the remedy it provides—reinstatement and award of back pay—is essentially equitable. *Grandison v. United States Postal Service*, 696 F. Supp. 891, 895–96 (S.D.N.Y. 1988). But cf. *Beesley v. Hartford Fire Ins. Co.*, 723 F. Supp. 635, 652 (N.D. Ala. 1989) (jury trial guaranteed by Seventh Amendment when employee seeks "compensatory damages" under Title VII). The correctness of jury instructions, however, is often at issue in Age Discrimination in Employment Act cases, which may be tried by jury and which adopt Title VII case law regarding allocations of the burden of proof. See, e.g., *Nelson v. Green Ford, Inc.*, 788 F.2d 205, 207 (4th Cir. 1986).

(1989) (citing undue complexity and potential jury confusion, court declined to adopt federal method of allocating burden of proof for cases brought under state age discrimination law patterned after Title VII).

■   Under current federal law, "[t]he critical inquiry . . . is whether gender was a factor in the employment decision at the moment it was made." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 241 (1989). When the plaintiff proves that a discriminatory reason, such as gender, played a motivating factor in an employment decision, the burden of persuasion then falls upon, and remains with, the employer to prove "by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.* at 258. Placing the burden of proof on the employer in such situations is appropriate because, once the plaintiff has shown that an illegal, discriminatory motive was a factor in the employer's decision, the reason for applying the *McDonnell Douglas* formula[3]—to uncover the motives involved in the employment decision—no longer exists. See *Grant v. Hazelett Strip-Casting*

---

[3] Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), the plaintiff first must establish a prima facie case by showing that (1) she belongs to a protected class, (2) she applied and was qualified for a job, (3) she was rejected, and (4) after her rejection, the employer continued to seek applicants with similar qualifications. See *State v. Whitingham School Board,* 138 Vt. 15, 19, 410 A.2d 996, 997–98 (1979) (following *McDonnell Douglas* approach). Once a prima facie case is established, the employer must show that the employment decision was based on legitimate, nondiscriminatory considerations. *Id.* If the employer is able to do so, the plaintiff is then required to prove by a preponderance of the evidence that the considerations proffered by the employer are a mere pretext. *Id.* The burden of persuading the factfinder that the defendant intentionally discriminated against the plaintiff remains with the plaintiff at all times. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

We note that when the *McDonnell Douglas* formula is applied in federal age discrimination cases with juries as the factfinders, the jury need only be told that the plaintiff must prove, by a preponderance of the evidence, that age was one of the determinative factors in the employer's decision. See, e.g., *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1180 (6th Cir. 1983). The *McDonnell Douglas* formula was intended to aid the judge in organizing the evidence presented, not to be given as a prospective jury charge; accordingly, the jury need not ever hear phrases like "prima facie case" or "shifting burden of proof." See, e.g., *Nelson v. Green Ford, Inc.,* 788 F.2d at 207; *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 85 (2d Cir. 1983).

*Corp.*, 880 F.2d 1564, 1568–69 (2d Cir. 1989). In *Price Water-house*, the Court ruled that the following evidence was sufficient proof of a discriminatory motive to place the burden of persuasion on the employer: (1) the employer heavily relied on stereotypical comments submitted by colleagues in connection with the plaintiff's application for partnership; (2) female candidates for partnership in previous years had been evaluated in sex-based terms; and (3) the decisionmaker's spokesman told the plaintiff after the decision had been made that, in order to improve her future chances for partnership, she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." 490 U.S. at 235–36.

In the instant case, plaintiff presented evidence that gender was a motivating factor in Eaton's decision not to hire her. In addition to testifying that preceding male editors had enjoyed flexible work hours,[4] plaintiff testified that defendant Eaton told her: "Nancy, if I give you flextime, then every woman in state government with small children will want flextime."[5] The jury should have been instructed that if it found that plaintiff had shown by a preponderance of the evidence that gender was a motivating factor in the refusal to hire plaintiff on a flextime

---

[4] One may argue that there was no evidence that any preceding male editor had ever been allowed a flextime schedule. Plaintiff readily conceded that no previous editor had asked for or been given the same flextime schedule she sought—two mornings off per week with time to be made up in the evenings or on weekends. She did testify, however, that she sought merely what preceding male editors had been given: the flexibility to take off ten of the forty conventional state hours (7:45 a.m. to 4:30 p.m.) and make up the time during nonconventional hours. For example, it was undisputed that one former editor came to work at 9:30 every morning and worked until 6:00 or 6:30 in the evening. Plaintiff testified that she wanted only the same flexibility, but in larger blocks on two weekdays.

[5] Upon hearing Mr. Eaton's remark, plaintiff did not immediately confront her potential employer with a charge of sexist stereotyping. On this point, she testified:

I remember not only what he said, but what I felt when he said it. He knew when he said it that it was a sexist thing for him to say. And I was ashamed at my response. I considered for one minute confronting him on it, and then I wanted the job. And so I said I'm going to ignore it. I'm going to disassociate myself from all those other women and not stand up for them. I'm going to go for this job.

schedule, then defendants must show by a preponderance of the evidence that the same decision would have been made even absent the discriminatory motive. See *Grant*, 880 F.2d at 1569 (citing *Price Waterhouse*, court held that it was for jury to decide whether evidence, if believed, showed that age played a motivating role in decision). Instead, the court gave, in relevant part, the following instruction:

> The Defendant has come forward with evidence claiming that it did not accept plaintiff's condition of employment for one or more legitimate, that is, nondiscriminatory, reasons. In order to prevail, plaintiff must prove to you by a preponderance of the evidence that the reasons claimed by the defendant are a pretext. That is to say, the reasons the defendant is using are a cover-up of a discriminatory reason. If you decide the defendant's reasons are a cover-up of a discriminatory reason, then your verdict shall be for the plaintiff. If not, then your verdict shall be for the defendant.
>
> To put it another way, if you find that there are mixed reasons for plaintiff's not being hired, legitimate and discriminatory, then you are to decide a simple question. If plaintiff would have been denied the editorship given her condition of employment, without any influence from the fact that she was female, then the plaintiff has not proven her claim and your verdict shall be for the defendant.
>
> On the other hand, if you decide her gender did prevent her condition of employment from being accepted, regardless of other reasons, then your verdict shall be for the plaintiff.

At no time did the trial court indicate to the jury that, if it were to find plaintiff had shown that gender was a motivating factor in the employment decision, then defendants had to prove that they would have made the same decision even absent the discriminatory motive. By failing to mention defendants' burden of proof, these instructions were erroneous and prejudicial.

Because of the erroneous instructions, we cannot affirm the jury verdict in this case unless we conclude that, as a matter of law, plaintiff's evidence was insufficient for the jury to deter-

mine that gender was a motivating factor in defendants' decision not to hire her on a flextime schedule. We cannot so conclude. As the Court in *Price Waterhouse* pointed out, stereotypical remarks made at work do not necessarily prove that gender was a motivating factor in a particular employment decision; "[t]he plaintiff must show that the employer actually relied on her gender in making its decision." 490 U.S. at 251. Such stereotypical remarks, however, "can certainly be *evidence* that gender played a part." *Id.* (emphasis in original).[6] Certainly, comments such as the one offered into evidence here, which implies that an impermissible criterion was a factor in the employment decision, are sufficient evidence for the jury to conclude that the employer's decision was, at least in part, discriminatory, thereby placing the burden of persuasion on the employer to prove that the same decision would have been made absent the discriminatory motivation.

If the jury believed that Eaton made the alleged statement, it reasonably could have considered the statement proof that gender was a factor in his refusing to hire plaintiff on her terms. Eaton's alleged statement implies that he would not hire a woman, Graff, on a flextime schedule because other women would want the same type of schedule. This, in turn, indicates that he might have given a male candidate such a schedule had it been requested because it would not have set a precedent for female state employees with children. Based on the court's instruction, the verdict could well have resulted from a conclusion by the jury that gender was a motivating factor in defendants' employment decision but that plaintiff did not meet her charged burden of showing that the discriminatory factor actually led to

---

[6] We are aware of the case of *Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309 (6th Cir. 1989), an age discrimination case in which the court affirmed summary judgment for the employer. In *Gagne*, the employee had received a series of oral and written reprimands for mishandling several cases during the year before she was fired for unsatisfactory work performance. *Id.* at 313. Although the employee claimed that the supervisor had said something to her once to the effect that he "needed younger blood," the employee herself "characterized the comment at issue as an isolated remark uttered by her supervisor during a meeting attended by a number of employees, and indicated that the statement was made facetiously and was not directed at any particular individual." *Id.* at 314. Such circumstances differ from this case considerably.

the decision. Assuming the jury found that mixed motives were present, the verdict might have gone the other way if the court had properly placed the burden on the employer. We cannot allow the jury's verdict to stand.

■ Defendants point out that Eaton never admitted making the statement that no previous male editor was ever given a guaranteed flextime schedule, and that the man eventually hired to fill the position was not given a flextime schedule. According to defendants, no flextime schedule was ever approved because there were legitimate reasons for not providing such a schedule to the incoming editor. These considerations do not affect our holding. It is for the jury to determine whether the evidence is credible and whether it played a motivating role in the employment decision. *Grant*, 880 F.2d at 1569; *Perry v. Kunz*, 878 F.2d 1056, 1061 (8th Cir. 1989). Defendants had an opportunity to present all of their evidence before the jury, which was then free to conclude that plaintiff had not been given the job for reasons other than her gender. Nonetheless, the submission of Eaton's alleged statement entitled plaintiff to a charge informing the jury members that if they believed the statement and determined that it met plaintiff's burden of showing that a discriminatory motive was a factor in the employer's decision, defendants then had the burden of showing that the same decision would have been made absent the discriminatory motive.

We need not address plaintiff's second claim of error regarding defendants' closing argument.

*Reversed and remanded.*

**Peck, J.,** dissents without opinion.