*Li v. Norwich Univ.*, No. 577-10-18 Wncv (Tomasi, J., May 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 577-10-18 Wncv |

| | |
|---|---|
| Xingbo Li,<br>  Plaintiff<br><br>  v.<br><br>Norwich University,<br>  Defendant | |

### Opinion and Order on Norwich's Motion for Summary Judgment

This case arises out of the denial of tenure by Defendant Norwich University ("Norwich") to assistant professor of Chinese, Plaintiff Xingbo Li.  Mr. Li claims that Norwich breached binding employment policies (1) by failing to inform him properly prior to the tenure determination of performance deficiencies that ultimately resulted in the denial of tenure and (2) by miscalculating and misusing his student evaluations in the tenure review process.  He alternatively asserts these claims styled under the doctrine of promissory estoppel.  Mr. Li further claims that Norwich's tenure denial was influenced by unlawful discrimination against him on the basis of race and national origin—he is Chinese.[1]  Norwich has filed a motion for summary judgment addressing all claims.  The Court makes the following

---

[1] Mr. Li asserted other claims in the complaint but withdrew them in the course of summary judgment proceedings.  *See* Mr. Li's Opposition to Summary Judgment 2 n.1 (filed Jan. 3, 2020).  Accordingly, the Court addresses only the claims described herein.

determinations.

I. *Summary Judgment Standard*

Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers*, Inc.*,* 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 215 A.3d 109, 113. The material facts of this case are undisputed unless otherwise indicated below.

II. *Undisputed Facts*

Mr. Li's claims arise out of Norwich's annual review, pre-tenure, and tenure processes. The core tenure process appears in the Faculty Manual at § 2.3. The initial tenure track appointment is for a probationary term of 6 years, unless credit

2

is granted for prior experience, at the conclusion of which the candidate is tenured or "separated" following a one-year terminal appointment. *Id.* § 2.3.1. Mr. Li was given credit for one year of prior experience. In the third year of probation, the College Dean initiates a pre-tenure review process. "This pre-tenure review is intended to inform probationary candidates of progress towards tenure and to alert these candidates to any deficiencies in their teaching, professional development, and university service." *Id.* § 2.3.4.

The tenure decision process occurs in the final year of probation, as follows:

1. College deans submit in writing their recommendation and the recommendations of the department and college Promotion and Tenure Committee, together with other supporting documentation, to Provost and Dean of the Faculty who forwards this material to the University Promotion and Tenure Committee. The latter committee in turn submits its recommendation (along with those of the department, college and College Dean) and supporting documentation to the Provost and Dean of the Faculty. . . .

2. The Provost and Dean of the Faculty submits in writing his or her recommendations to the President, together with those from the department, college, College Dean and the University Promotion and Tenure Committee. The President, in turn, submits those recommendations, together with his or her own, to the Board of Trustees for final action.

3. A negative recommendation will be communicated in writing to the faculty member at the time any such recommendation is made. This communication will include a summary of the reasons for the negative recommendation, which shall be final unless the faculty member appeals. The faculty member may appeal a negative recommendation to the next higher level. . . .

*Id.* § 2.3.5. "Recommendations for tenure will be based on department or school, and college, standards of performance" in teaching, professional development, and university service. *Id.* § 2.3.6.

3

Mr. Li taught in the Chinese Program, which is part of the Department of Modern Languages in the College of Liberal Arts. The annual review, pre-tenure, and tenure processes are further explicated in the College of Liberal Arts Standards & Procedures for Annual Evaluation, Promotion & Tenure (CoLA Standards). The CoLA Standards provide more procedural and substantive detail to these processes. They explain that annual reviews and tenure recommendations are based on three general standards: teaching, professional development, and service. CoLA Standards 1. "The college considers excellence in teaching pre-eminent among areas of faculty responsibility. The college seeks to tenure and promote individuals of demonstrated teaching excellence, as measured by such evaluative instruments as colleague visitations and reviews, recommendations of department chairs, student evaluations, and peer evaluations written by outside observers." *Id.* Each of these general standards is broken down into many more component standards. *Id.* at 4–7.

Neither the faculty manual nor the CoLA Standards provides objective mechanisms for measuring whether or to what extent a candidate meets the standards ultimately used to make tenure decisions. The determination of the candidate's satisfaction of the standards is largely within the judgment of the annual, pre-tenure, or tenure reviewers. While the annual reviews and pre-tenure process are intended to inform the candidate of deficiencies and facilitate the candidate's progress towards tenure, neither purports to bind the ultimate tenure

4

decision makers. Similarly, the lower levels of tenure decision making do not bind the higher levels. Accordingly, positive annual reviews and a positive pre-tenure process do not guarantee an ultimate positive tenure decision. The entire process includes the discretion for decision makers to make independent determinations that may be inconsistent with one another. One only becomes tenured after surviving a gauntlet of scrutiny yielding a "yes" at every level.

The tenure determination process for Mr. Li unfolded as follows. On December 12, 2017 and January 22, 2018, the CoLA Promotion and Tenure Committee (CoLA PTC) and the CoLA Dean, respectively, recommended Mr. Li for tenure. The matter proceeded to the University Promotion and Tenure Committee (UPTC). Following a tenure presentation, by a vote of 5 to 1, however, the UPTC voted against tenure and so informed Mr. Li in a letter dated March 2, 2018. The letter states, in relevant part, as follows:

> The [UPTC] convened on February 20, 2018 regarding your application for promotion and tenure. By vote of the [UPTC] members present, your application for promotion and tenure was not advanced.
>
> The comprehensive review of materials from your portfolio, student course evaluations, and annual assessments did not demonstrate adequate evidence of teaching excellence. As stated in the faculty manual, "The University seeks to tenure individuals of demonstrated teaching excellence, as measured by such evaluative instruments such as colleague visitations, observations, and reviews, recommendations of department chairs, student evaluations, and peer evaluations written by outside observers. Although the [UPTC] appreciated that you have worked to improve your effectiveness as an educator, it did not consider the improvements to be sufficient for promotion and tenure. Review of your dossier in the area of teaching documented student course evaluations at or below the University average. Further, the [UPTC] concluded that your scholarship and publication record did not meet the high standard for promotion and tenure.

Letter from Dr. Affenito to Mr. Li (dated March 2, 2018).[2]  This denial gave Mr. Li

the right to appeal to the Provost, the next decision-making level.  Faculty Manual §

2.3.8.

Mr. Li thus appealed to Provost Sandra Affenito.  Mr. Li and Provost Affenito

met on April 9, 2018, and by letter dated April 20, Provost Affenito denied Mr. Li's

appeal.  The letter states, in relevant part, as follows:

> Thank you for the opportunity to meet with you on April 9, 2018
> regarding your appeal of the recommendation made by the [UPTC]
> against your promotion to Associate Professor with tenure.
>
> My comprehensive appellate review of your portfolio and the
> supplemental oral and written testimony you submitted did not
> demonstrate adequate evidence of teaching excellence and professional
> development to support tenure.  The [UPTC] review of your dossier
> noted that while you made efforts during your employment at Norwich
> University to enhance your effectiveness as an educator and to
> generate scholarly work, your performance was not sufficient to satisfy
> our high standards for tenure.  I concur.  Therefore, I affirm the
> [UPTC] recommendation to not advance your application for promotion
> and tenure.

Letter from Dr. Affenito to Mr. Li (dated April 19, 2018).  According to the tenure

process as described in the Faculty Manual, Dr. Affenito's appeal decision then

became final.  Faculty Manual § 2.3.8.

III.  *The Employment Agreement Claims*

Mr. Li claims that the annual review, pre-tenure process, and tenure process

employment policies described above are binding on Norwich, and that Norwich

breached those obligations (1) by failing to implement the annual review and pre-

---

[2] Dr. Affenito is an *ex officio* member of the UPTC.

6

tenure process so as to effectively inform him of what would become the bases for his denial of tenure, and (2) by improperly using or calculating his student evaluation scores.

A. *Binding Nature of the Employment Policies*

Mr. Li's employment was not "at will." It was a tenure-track appointment that would lead either to tenure or to separation. Faculty Manual § 2.3.1. In the meantime, it was subject to a "just or sufficient cause" limitation on termination. *Id*. The annual review, pre-tenure process, and tenure process provisions are neither vague nor aspirational. They clearly are material terms of the employment relationship and were binding on Norwich. Neither Norwich nor Mr. Li were at liberty to disregard them.

Norwich does not argue otherwise. Its sole argument on this matter is to the effect that there is no obligation in the policies to award tenure based on the content of annual reviews or the pre-tenure process. Those processes do not bind the tenure decision. As described above, the various levels of tenure decisions are independent and subject to the judgment of the reviewer. Under the policies, tenure is never guaranteed. Mr. Li's response to this argument is to clarify that he is not arguing that Norwich was obligated to award tenure to him. Rather, he explains, his claim is that he was entitled to be informed of his deficiencies as those may affect the tenure decision and, in his view, Norwich breached this duty to inform.

Thus, the parties may dispute precisely what the annual review and pre-tenure processes required of Norwich, but there is no dispute that these and related

7

provisions were binding and enforceable.  Perceiving no controversy as to this issue, the Court declines to address it further.

B.  *The Duty to Inform Claim*

As described above, the annual reviews and pre-tenure process are intended to inform the candidate of deficiencies and facilitate the candidate's progress towards tenure.  Mr. Li argues that Norwich breached this "duty to inform" insofar as he ultimately was denied tenure due to perceived deficiencies in teaching excellence, scholarship, and service, and he does not believe that he was adequately warned of those deficiencies in his annual and pre-tenure reviews.  In other words, Mr. Li looks to the asserted reasons for the denial of tenure and reasons backwards that his annual and pre-tenure reviews therefore failed to apprise him sufficiently that he had the deficiencies that ultimately would result in the denial of tenure. *See* Mr. Li's Statement of Facts ¶¶ 8–16 (filed Jan. 3, 2020).

The Court rejects this claim.  The tenure decision is based on several levels of review.  Each positive tenure recommendation leads to the next level of review. Each subsequent, higher review is made independently and, though guided by the tenure standards, is subject to the reviewer's judgment and discretion.  There is no necessary contradiction in a candidate receiving a positive pre-tenure review but still failing to achieve tenure.  Those who conduct the annual reviews and the pre-tenure review bring to the process their own experience, discretion, and judgment. But that experience, discretion, and judgment does not bind subsequent decision makers, who are free to make their own determination.  The employment policies do

8

not guarantee that the annual reviews and pre-tenure process will be undertaken in a manner that accurately predicts how tenure decision making will be made. Thus, it is insufficient to point to the reasons for the denial of tenure and conclude *ipso facto* that there must have been a breach of the duty to inform during the annual review and pre-tenure processes, yet that is how Mr. Li has framed his claim. The tenure decision itself cannot be the measure of Norwich's compliance with the annual and pre-tenure review processes.

Otherwise, Mr. Li does not explain how his annual and pre-tenure reviews deviated from a proper standard by which to measure Norwich's obligations. The summary judgment record includes substantial evidence that appears to reflect on its face that his annual reviews and pre-tenure review were conducted robustly and in good faith, and there is no allegation that they simply did not occur, were undertaken in bad faith or by unqualified persons, etc. Though his advocates, including Department Chair Frances Chevalier, passionately disagreed with how tenure discretion ultimately was exercised, that and similar advocacy in Mr. Li's favor may point out the breadth of discretion involved in the tenure assessment, or that those higher decision makers may have been influenced by other factors, but it does not demonstrate that there was some actionable breakdown in the annual and pre-tenure reviews amounting to a breach. This is so even though the eventual tenure decision reflects what may amount to disagreements with those who

9

undertook the earlier reviews as to whether Mr. Li was on track to be tenured or ought to be tenured.

Norwich is entitled to summary judgment on this claim.

C. *The Student Evaluation Claim*

Mr. Li also claims that Norwich breached its obligations by miscalculating average scores of his student evaluations. He argues that some of his scores should have been eliminated from the calculation because they were statistically unusable due to too few evaluations from a particular class. He claims that, if his average scores were calculated correctly, they would have shown that he received above average evaluations rather than below average evaluations. He also argues generally that the whole student evaluation process was known to have little value as a reflection on teaching excellence.

This claim has no merit. Nothing in the manuals entitled Mr. Li to any particular methodology for calculating his average student evaluation scores or to any particular weight on this criterion as one among many for assessing teaching excellence. While evaluation scores were mentioned in the denial letter from the UPTC, its assessment of teaching excellence was based on a "comprehensive review of materials from your portfolio, student course evaluations, and annual assessments." Altogether, that comprehensive review "did not demonstrate adequate evidence of teaching excellence." There is no showing that Mr. Li was entitled to any particular treatment of his annual evaluations or that any different

10

calculation of his averages would have had any material impact on the UPTC's broader determination of teaching excellence.

IV. *The Promissory Estoppel Claims*

Mr. Li asserts the claims addressed above alternatively framed under the doctrine of promissory estoppel, exclusively in the event that the relevant policy provisions are determined to not be binding on Norwich. *See* Complaint ¶ 177 (filed Oct. 15, 2018). Otherwise, there is no difference in substance between the contract claims and the promissory estoppel claims, which are purely duplicative.

As the Vermont Supreme Court has explained, the law of Vermont in the area of employment agreements "draws on aspects of both unilateral contract formation and promissory estoppel." *Taylor v. National Life Ins. Co.*, 161 Vt. 457, 464 (1993); *see also* Restatement of Employment Law § 2.05 (explaining that traditional contract principles are a "conceptually awkward fit" in this context). It is often unnecessary or unhelpful to distinguish between them in this context. Here, there is no dispute that the relevant provisions of the employment agreement are binding, and thus there is no reason to separately analyze Mr. Li's claims under the doctrine of promissory estoppel.

Norwich is entitled to summary judgment on Mr. Li's employment agreement claims.

V. *Discrimination*

Mr. Li also claims that his denial of tenure reflects discrimination against him on the basis of race and national origin in violation of Vermont's Fair

11

Employment Practices Act, 21 V.S.A. §§ 495–496a.  Norwich seeks summary judgment on this claim.  It argues that the record includes no evidence of any such discrimination and, to the contrary, it includes general, affirmative evidence that it does not discriminate against Chinese professors or other employees.  Mr. Li argues that the record includes ample evidence of disparate treatment, whether viewed under "mixed motive" law or "pretext" law, to demonstrate a dispute of fact on this claim, and he notes that relevant discovery requests, which remain pending, are targeted at revealing additional such evidence.

Norwich filed a motion to stay discovery on the same day that it filed its summary judgment motion.  At the time, Mr. Li had sought, among other things, files relating to the tenure processes of other professors, which presumably might reveal evidence that Mr. Li was held to an unusually demanding standard or otherwise treated unfavorably.  Norwich argued that the discovery would be burdensome, tangential at best to the issues of the case, and at least should await the determination of its summary judgment motion.  The Court granted the motion to stay to that extent.  Accordingly, Mr. Li's discovery requests remain outstanding.

Vermont discrimination law incorporates the prevailing federal "proof structures" for discrimination claims, commonly known by reference to *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) ("mixed motive" structure), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("pretext" or "single motive" structure).  *See Graff v. Eaton*, 157 Vt. 321, 324 (1991); 1 *Employment Discrimination Law and Litigation* § 2:2 (describing *Price Waterhouse* and

12

*McDonnell Douglas* as alternative "proof structures" and explaining that "mixed motive" and "single motive" descriptors are misleading and "it is no longer appropriate to use these words to describe separate claims"). Under *Price Waterhouse*, if the plaintiff can prove that a discriminatory motive played a role in the employment decision, then the burden of persuasion switches to and remains with the employer to prove that it would have made the same decision regardless. *See Graff*, 157 Vt. at 324. If the plaintiff cannot make that predicate showing of improper motive, a more traditional approach ensues. If plaintiff is in a protected class, is qualified for a job, and is denied employment, the burden shifts to defendant to provide nondiscriminatory reasons for the failure to hire. If defendant meets that burden, the ultimate burden of persuasion returns to the plaintiff to show that the nondiscriminatory reason for the employment decision promoted by the employer was a pretext for discrimination.[3] *See id*. n.3; *see also Gallipo v. City of Rutland*, 163 Vt. 83, 89 n.2 (1994) ("If the plaintiff fails to establish that an impermissible factor played a motivating part in the employment decision, then the *McDonnell Douglas* analysis applies.").

---

[3] The Court notes that while the burden of persuasion under *McDonnell Douglas* always remains with the plaintiff, the burden of production switches back and forth in pretrial proceedings to aid the court's determination of whether the claim should reach the jury. The shifting burden of production, however, is a matter for the court. Juries are not properly instructed to consider such issues. *See Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 154 (2d Cir. 2010); *Lewis v. City of Chicago Police Dep't*, 590 F3d 427, 439 (7th Cir. 2009); *Armstrong v. Burdette Tomlin Memorial Hosp.*, 438 F.3d 240, 249–50 (3d Cir. 2006).

In this case, Mr. Li points to evidence in the record that could be marshalled in favor of a showing, by inference or otherwise, that a discriminatory reason could have had a role in the denial of his tenure or that the nondiscriminatory reason for the denial of his tenure urged by Norwich was a pretext for discrimination. Such evidence includes, among other things, statements by witnesses, who presumably had a basis to know, that Mr. Li was held to a higher standard than other candidates, that his student evaluations were interpreted in a contrived way to his detriment, that his scholarship was inexplicably devalued, and that, against convention, he was denied tenure even though the CoLA PTC and CoLA Dean recommended him for tenure.

In light of such evidence, Norwich's argument in favor of summary judgment—essentially, that because it employs and has tenured other Chinese employees there is no reason to think it would discriminate against Mr. Li—is especially unconvincing. The mere fact than an employer has employed more than one Chinese employee, and has promoted some of them, does not necessarily indicate anything about whether a particular Chinese employee has been discriminated against.

At this point, the Court needs not engage in a more probing review of the evidence. It is clear that Mr. Li does not completely lack evidence that can be marshalled to show possible discriminatory treatment, and Norwich's response does not establish a defense as a matter of law. Further, relevant discovery is

outstanding.  This is sufficient to warrant the denial of summary judgment on this claim, at least at this stage, and to allow discovery to proceed.

Conclusion

For the foregoing reasons, Norwich's Motion for Summary Judgment is granted, in part, and denied, in part.  Norwich shall respond to outstanding discovery requests within 30 days.

Dated this __ day of May 2020 at Montpelier, Vermont.

_____

Timothy B. Tomasi
Superior Judge