Neil J. Martin v. Town of Springfield

Town of Springfield v. Neil J. Martin

[450 A.2d 1135]

Nos. 130-81, 372-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed August 31, 1982

*Plante, Richards, Terino & Hanley,* White River Junction, for Martin.

*Parker, Lamb & Ankuda, P.C.,* Springfield, for Town of Springfield.

**Underwood, J.** Neil Martin, an 18-year veteran with the Town of Springfield police force, was fired by the Town on January 15, 1979, for insubordination. His discharge and the subsequent events have triggered two court battles between him and the Town, both of which are now before us on appeal and cross-appeal.

The policeman appealed his dismissal pursuant to a town ordinance. When the discharge was ultimately upheld by the Town Manager, he brought a declaratory judgment action in superior court alleging that he had been denied a hearing before the Town Selectmen and that state law required such a hearing. Officer Martin first moved for summary judgment in his declaratory judgment action on the grounds that 24 V.S.A. § 1934 requires the Town to follow state statutory dismissal procedures when firing a police officer unless the Town's charter contains dismissal procedures. He further argued that the Springfield Town charter did not contain the requisite procedures, and thus the proceedings pursuant to the Town ordinance were invalid. The superior court granted his motion for summary judgment and ordered the Town to reinstate him until such time as he was afforded the statutory hearing procedures. It also ordered the Town to pay him the back pay he had lost by reason of the discharge, and his costs in bringing the action. The Town appeals the order awarding summary judgment, and officer Martin, by cross-appeal, challenges the computation of the back pay awarded him. These appeals are before us in Docket No. 130-81.

The Town complied with the superior court's order to reinstate the policeman, but then immediately suspended him pending final determination of the matter, and scheduled a merits hearing for the officer before the Board of Selectmen, as required by the statutory hearing procedures set forth in 24 V.S.A. § 1932. Officer Martin at that point opted to have the facts determined by the district court, in the manner set forth in 24 V.S.A. § 1932(c), and, on April 2, 1981, moved in that forum for summary judgment. The district court denied his motion, and proceeded to hear the case on the merits and determine the facts.

Among the findings it certified to the Town Selectmen were that the policeman had refused to obey two lawful orders from the police chief, that this disobedience was unwarranted and unreasonable, and constituted insubordination. These findings, which are final, 24 V.S.A. § 1932(c), were certified to the Springfield Board of Selectmen, which thereupon dismissed officer Martin for the second time. The policeman appeals only from the district court's denial of his motion for summary judgment. This appeal is before us in Docket No. 372-81.

Upon review, we conclude that the superior court erred in granting the policeman's motion for summary judgment in Docket No. 130-81. The Town's ordinance provides the procedural protections mandated by statute, and thus the Town was within its rights to utilize them in dismissing the policeman in the first instance. Since the policeman's discharge was proper, he was not entitled to back pay, or to have his case heard before the district court in Docket No. 372-81. Accordingly, we do not reach the merits of his cross-appeal in Docket No. 130-81. The Town's ordinance provides the proof his motion for summary judgment in Docket No. 372-81.

Discussion of the superior court's error in Docket No. 130-81 requires us to set out in more detail the facts of this case as they relate to the procedures required by statute and utilized here, pursuant to the Town's charter and ordinance.

## I.

Most of the policeman's 18 years with the Springfield police force were served under his brother, who was chief of police

from 1947 until his death in 1978. Officer Martin applied for the vacancy created by his brother's death, but someone else was chosen chief. His relationships with a series of police chiefs who served from his brother's death to his dismissal were strained.

The incident here began with a letter from officer Martin to his chief asking to be relieved of command responsibility. The chief granted the request in writing, but noted the habitual nature of such requests, and "strongly suggest[ed] that in the future you not request in the reverse because I could not in good conscience ever recommend you for Senior Officer status again."

Sometime later, officer Martin was the only regular officer on duty. Two part-time "special" officers were also working. Officer Martin refused to sign several reports on incidents arising during this shift because he had a signed memo from the chief relieving him of command responsibility. Three days later, at a face-to-face meeting with officer Martin and two of his superiors, the chief explained that a "regular" officer was always in command over part-timers or "special" officers, even though he might be at the bottom rung of the ladder as far as other regular officers were concerned. The chief then ordered him to sign two of the reports. Officer Martin refused, and the chief forewarned him that disciplinary action could follow.

Thereafter, the chief issued a written memorandum to him:

> To confirm my verbal order to you on 10 January 79 in my office, you are ordered to assume the Senior Officer status (i.e., supervisory status), when you are the only regular officer on duty with special officers.
>
> In my office you verbally indicated dissatisfaction with this order.
>
> I therefore order you to directly respond to me via inter-office letter before the termination of your watch on 14 Jan. 79 as to whether or not you will comply with my order.

When officer Martin failed to respond, the chief directed Martin's supervisor to go to the officer and request the ordered letter. Officer Martin refused to provide it, and on January 15, 1979, he was terminated for insubordination by the chief. He

then challenged his discharge pursuant to the appeal provisions of a Town ordinance.

Springfield Town Ordinance No. 0-73-2 creates a merit personnel system for town employees. Its provisions give Town employees the right to continue employment during good behavior, and require approval from the Town Manager before a department head may dismiss an employee. Written notice of a dismissal must be served on the employee and filed with the Town Personnel Director before it takes effect, and is finally determined only after appeal to the Personnel Director, the Town Personnel Advisory Board, and then to the Town Manager.

Officer Martin first appealed to the Personnel Director, who issued findings of fact and conclusions sustaining the dismissal. He then appealed to the Personnel Advisory Board, which was composed of four Town employees—one each from public works, fire department, police department, and administration—and one citizen member. Department heads are disqualified from service on the Board, which is empowered to hear employee appeals of suspensions, demotions, and dismissals. The Town Ordinance provides that, after hearing, "[t]he Personnel Advisory Board shall submit a written statement of facts, findings and recommendations to the Town Manager which shall be advisory only, and the action taken by the Town Manager shall be final and conclusive."

The Board recommended that officer Martin be reinstated and receive a written reprimand and one-day suspension without pay. Its recommendation of leniency was based on what its findings characterize as "a prevailing element of lack of communication in the Chain of Command [sic] which has caused confusion on the part of Martin as to his exact command status."

The Town Manager rejected the Board's recommendation, and upheld the discharge. The Town Manager's decision and the reasons therefore are set out in detailed findings of fact which analyze exhaustively the written record and tapes of the hearing by the Board. The Town Manager, like the District Court two years later, concluded that officer Martin was guilty of wilful insubordination, and that any possible confusion had been removed in the face-to-face meeting with the chief prior to his disobedience.

The Town Manager thereupon considered the issue of whether termination was "reasonable and fair in light of the nature of his alleged offense, and the officer's previous record." As to the nature of the offense, the Manager concluded:

> In the hierarchy of offenses that violate the basic principles of police work, insubordination, particularly insubordination related to actual field operations, takes second place only to actual abuse and violation of the law which an officer is sworn to uphold.

Nevertheless, he found it necessary to first review officer Martin's past record before upholding the termination. That review convinced the Town Manager that the incident at issue here was characteristic of officer Martin's inability to accept supervision from a succession of chiefs of police:

> When balanced against the positive citations in the Personnel file of Mr. Martin, one can only conclude that historically, and particularly since the date of the death of his brother, the late Police Chief, [Officer] Martin has found it difficult, if not impossible, to accept supervision from the Chief of Police.
>
> In all actions dealing with personnel, a Manager must be patient, fair and merciful. But, patience and mercy are not meant to destroy authority and a chain of command. With this incident, Mr. Martin has exhausted his ration of patience and mercy in the Town of Springfield.

Accordingly, he sustained the termination. It was from this decision that officer Martin sought relief in his declaratory judgment action in superior court.

## II.

Chapter 55 of Title 24 provides statutory authority for a town to hire police officers. 24 V.S.A. § 1931 provides that police officers "shall hold office during good behavior, unless sooner removed for cause." 24 V.S.A. § 1932 provides very specific notice and hearing guidelines to be followed "[w]henever it appears . . . that any regular officer has become negligent or derelict in his official duty, or is guilty of conduct unbecoming an officer." The superior court held that the town

should have followed these statutory procedures, rather than those provided for by the town ordinance, relying for its holding on 24 V.S.A. § 1934:

> Notwithstanding any contrary provisions in any municipal charter, the provisions of sections 1931–1933 of this title shall control, *unless* a municipality has charter provisions *providing for* tenure of police officers during good behavior with removal only after hearing and for cause. (Emphasis added.)

The superior court, stressing the words "charter provisions," held, "The statute very specifically requires that the procedures for a hearing be contained in the Charter if the Town is to avoid the provisions of Section 1932." The Town argued that the charter does in fact contain provisions "providing for" the requisite safeguards.

We believe the court misconstrued the statute. Had the legislature intended to require that municipalities enact specific procedures for removal of police officers into the body of their charters, it would have said so. Instead, it required only that the charter contain provisions *"providing for* tenure of police officers during good behavior with removal only after hearing and for cause." 24 V.S.A. § 1934 (emphasis added).

The Town's charter does so provide. Section 2 states that "all provisions of the statutes of the State of Vermont, relating to municipalities, shall apply to the town of Springfield," unless modified by charter, ordinance or rule. Similarly, § 90 provides, "All general laws relative to the government of towns shall be in force in the town so far as the same can be applied consistently with the intents and purposes of this charter, but shall be deemed superseded as to this town so far as inconsistent herewith."

 Chapter 55 of Title 24 clearly contains "general laws relative to the government of towns." It is, in fact, the source of their authority to hire police officers. Thus by the plain terms of the Town Charter, also enacted by the legislature, the provisions of Chapter 55 of Title 24 apply unless and to the extent that they are not superseded by charter, ordinance or rule. Thus, absent a showing that the provisions for tenure during good behavior, hearing, and removal only for cause

have been superseded, the Charter does in fact have provisions "providing for" these protections for police officers.

Moreover, the trial judge's conclusion that, as a matter of law, the charter itself has to contain the specific hearing procedures is clear error.

24 V.S.A. § 1121 specifically provides:

> (a) A municipality may adopt rules relating to personnel administration, including the following: . . . tenure, . . . dismissal, . . . settlement of disputes and appeals.
>
> (b) The personnel rules may apply to any or all employees of a municipality, including officers and employees of a . . . police department maintained by the municipality. . . .

The legislature made such personnel rules open to adoption by majority vote of the legislative body of a municipality, 24 V.S.A. § 1122, rather than requiring the more cumbersome procedures ordinarily applicable to promulgation of rules and ordinances. 24 V.S.A. §§ 1971–1975. Thus it clearly intended to make personnel matters subject to regulation by local officials, so long as the regulations promulgated afford police officers tenure during good behavior, the opportunity for hearing, and removal only for cause.

The discharge of officer Martin pursuant to the Town of Springfield's personnel procedures set out in the Town's ordinance in fact afforded him those protections. His discharge was considered by the Personnel Director, who issued written findings; he was heard by a sympathetic Personnel Board composed of other city employees who issued findings and recommendations which were considered and rejected only after a thorough review by the Town Manager.

We believe that officer Martin has had all the procedure to which he is entitled. See *Burroughs* v. *West Windsor Board of School Directors*, 138 Vt. 575, 578–79, 420 A.2d 861, 863–64 (1980).

*The order of the superior court in Docket No. 130-81 is reversed, and judgment is entered for the Town of Springfield. The appeal is dismissed in Docket No. 372-81, as required by our decision in Docket No. 130-81.*