## Raymond F. Gallipo v. City of Rutland, Fire Chief Gerald Lloyd, and Gerald Lancour

[656 A.2d 635]

No. 91-320

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed December 16, 1994

*Andrew Jackson*, Middlebury, for Plaintiff-Appellant.

*Samuel Hoar, Jr.*, and *Susan J. Flynn* of *Dinse, Erdmann & Clapp*, Burlington, for Defendants-Appellees.

**Gibson, J.** Plaintiff Raymond F. Gallipo appeals a grant of summary judgment in favor of defendants City of Rutland and Rutland Fire Chief Gerald Lloyd, and the denial of his motion to disqualify the trial judge. We affirm summary judgment in part and reverse in part, and we affirm the decision of the administrative trial judge denying the motion to disqualify.

Plaintiff joined the Rutland Fire Department in 1962. In November 1985, when plaintiff was the most senior firefighter, a lieutenant's position opened up in the department. Chief Gerald Lloyd posted a notice of requirements for the position, which included responsibility for supervision of the fire alarm and traffic system—a responsibility not included in the job description set forth in the personnel manual. Plaintiff was not selected for the position, nor was he selected for two subsequent promotions, notices for which also included job requirements not listed in the personnel manual.

In September 1987, plaintiff filed a complaint under the Vermont Fair Employment Practices Act, 21 V.S.A. §§ 495-496, alleging handicap discrimination because the department had not promoted him due to his known reading problem. Plaintiff subsequently was assigned to menial tasks at the firehouse, and for the first time in his career, received disciplinary memoranda in his personnel file. In January 1988, plaintiff filed a complaint in superior court, alleging that defendants' failure to promote him deprived him of a property right under 42 U.S.C. § 1983, was an unlawful employment practice under 21 V.S.A. § 495, violated provisions of the City charter and the City's personnel regulations, interfered with his contractual and business relations, and intentionally inflicted emotional distress upon him. An additional count alleging that a fellow firefighter assaulted

plaintiff has been stayed by stipulation of the parties pending resolution of this appeal.

Defendants moved for summary judgment, which the trial court granted on all counts. Plaintiff thereafter filed a motion to disqualify Judge Richard W. Norton, who had heard the summary judgment motion, and for a rehearing of the summary judgment motion. Administrative Judge Stephen B. Martin denied the motion, and this appeal followed.

Summary judgment will be granted if, after an adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial. *Poplaski v. Lamphere*, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989). In reviewing a grant of summary judgment, we will affirm if there is no dispute as to a genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. See *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985) (Supreme Court will apply same standard as trial court in considering correctness of disposition of summary judgment motion).

## I.

Plaintiff's major contention is that the standard practice in the Rutland Fire Department was to promote the most senior candidate unless that person did not want the job or had an alcohol problem. He contends that this policy established a property right protected under 42 U.S.C. § 1983,[1] which the department violated when it passed him over for promotion in favor of persons less senior than he. The trial court found that plaintiff had not established such a protected property right. We agree.

Section 1983 does not create substantive rights—"it merely provides remedies for deprivations of rights established elsewhere." *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Further, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). A legitimate entitlement may arise from existing rules or understand-

---

[1] 42 U.S.C. § 1983 (1994) provides, in relevant part:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

ings that come from an independent source such as state law. *Id.*; see also *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (benefit may be property interest under due process if rules or mutually explicit understandings support claim of entitlement to benefit that party may invoke at hearing). Cf. *Roth*, 408 U.S. at 578 (where one-year employment contract was not renewed, there was no deprivation of property interest).

Plaintiff has not cited, nor do we find, any cases holding that, absent statutory or regulatory provisions, a right to promotion is a property right. See *Bigby v. City of Chicago*, 766 F.2d 1053, 1056-57 (7th Cir. 1985) (where statute provided for promotion of police officers based on merit, seniority and examination, choice between highest-ranking candidates remained discretionary and was not a matter of right); *Burns v. Sullivan*, 619 F.2d 99, 104 (1st Cir. 1980) (police officer's expectation of promotion not a property interest where state law permitted consideration of subjective factors).

Plaintiff contends that a genuine issue of material fact exists as to whether it was the department's policy to promote solely on the basis of seniority. He asserts in his deposition that such was the case, while Chief Lloyd, himself a firefighter since 1974, asserts in an affidavit that this was not the case. These assertions alone, however, are insufficient to raise a question of fact regarding the department's policy, particularly when they are considered in light of the entire record.

Relevant documents contained in the record include the City's personnel manual and the City Charter. Section IV of the personnel manual provides:

1. Promotion Policy

A. Vacancies in positions above the lowest rank in any category in the classified service shall be filled as far as practical by the promotion of employees in the service. Promotion in every case must involve a definite increase in duties and responsibilities and shall not be made merely for the purpose of effecting an increase in compensation.

City of Rutland, Vermont, Personnel Rules & Regulations (1978). The City Charter sets forth the powers of the fire chief in appointing subordinates:

The [fire chief] shall appoint . . . two (2) Lieutenants. The Chief may make such other appointment of subordinate Officers as he

or she deems necessary. *All qualifications being equal*, the Chief shall appoint senior Officers in the time of service to said subordinate offices.

Revised Charter of the City of Rutland § 23-1 (1987) (emphasis added).

■ Thus, under the charter, seniority serves only as a tie-breaker, "[a]ll qualifications being equal." The job description for the position of fire lieutenant, as set forth in the personnel manual, includes a list of educational and other minimum requirements *in addition to* five years of successful experience as a firefighter. We conclude that plaintiff had no property right to promotion based on seniority alone.

Nor is plaintiff's evidence sufficient to raise a genuine issue of an implied contractual provision justifying an expectation of promotion based on seniority. An implied contractual provision may arise through "established past practices," *Burlington Area Pub. Employees Union v. Champlain Water Dist.*, 156 Vt. 516, 521, 594 A.2d 421, 424 (1991), where "'the conduct of the parties . . . encompass[es] a continuity, interest, purpose and understanding which elevates a course of action to an implied contractual status.'" *Id.* at 525, 594 A.2d at 426 (Dooley, J., concurring) (quoting *General Comm. of Adj. v. Burlington Northern*, 620 F.2d 161, 163 (8th Cir. 1980)).

■■ Here, plaintiff offers the deposition of former Fire Chief Gerald Moore, who, when asked if officers had been appointed on the basis of seniority, replied: "In a general way. Not necessarily all the time." Plaintiff acknowledges that on more than one occasion within his memory the most senior firefighter at the department was passed over for promotion. He attributes these exceptions to the candidates' alcohol problems or their lack of desire for the promotion, but he fails to demonstrate a course of conduct on the part of defendants that an implied contractual provision existed for promotion based solely upon seniority. A bare allegation that seniority was routinely the determining factor in promotions will not suffice. See *id.* Plaintiff's evidence does not raise a genuine issue of material fact precluding judgment for defendants as a matter of law.

## II.

Plaintiff also asserts that Chief Lloyd interfered with his implied contract with the City for promotion according to seniority. We have held that interference with a contractual relation may be found even

where the contract itself is unenforceable. *Mitchell v. Aldrich*, 122 Vt. 19, 23, 163 A.2d 833, 836 (1960). Nevertheless, the plaintiff must have a reasonable expectancy of gain, a "rightful interest in having the . . . promise performed free from other outside interference." *Id.* As stated above, plaintiff's evidence is insufficient to show a property interest or an implied contract, or even to show a reasonable expectancy that he would be promoted solely on the basis of his seniority. Plaintiff's claim must therefore fail.

## III.

Plaintiff next alleges violations of Vermont's Fair Employment Practices Act (VFEPA). 21 V.S.A. §§ 495-496. Specifically, plaintiff claims that he suffered religious and disability discrimination, and that the Department retaliated against him for filing a VFEPA complaint with the attorney general. The standards and burdens of proof to be applied under the VFEPA are the same as those under Title VII of the federal Civil Rights Act of 1964. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 161, 624 A.2d 1122, 1128 (1992); see 42 U.S.C. § 2000e. To withstand summary judgment, plaintiff must present a prima facie case of discrimination. If plaintiff presents evidence that an impermissible factor played a motivating part in the employment decision, then the burden shifts to, and remains with, the employer, who must show that it would have made the same decision even if it had not considered the impermissible factor. See *Hodgdon*, 160 Vt. at 161, 624 A.2d at 1128-29.[2] "[U]nless the trial court finds that the plaintiff's evidence is insufficient to make this preliminary showing as a matter of law, under Vermont law, the issue must go to the jury." *Id.* at 162, 624 A.2d at 1129.

## A.

Plaintiff claims defendants discriminated against him because of his religious practices, a violation of 21 V.S.A. § 495(a)(1). Cf. 42

---

[2] The parties and the trial court incorrectly applied the *McDonnell Douglas* framework to plaintiff's discrimination claims under § 495. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); see also *Hodgdon*, 160 Vt. at 161, 624 A.2d at 1128-29 (explaining different burdens of production depending upon evidence presented by plaintiff). The trial court's decision was prior to our decision in *Graff v. Eaton*, 157 Vt. 321, 324, 598 A.2d 1383, 1384 (1991), where we adopted the *Price Waterhouse* framework, which is applicable to the claims raised by plaintiff. See *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989); *Hodgdon*, 160 Vt. at 161, 624 A.2d at 1128-29. If the plaintiff fails to establish that an impermissible factor played a motivating part in the employment decision, then the *McDonnell Douglas* analysis applies. *Hodgdon*, 160 Vt. at 162, 624 A.2d at 1129.

U.S.C. § 2000e(j) (religion defined as all aspects of religious observance, practice, and belief). He alleges that his viewing of the religious television program "700 Club" was a factor in Chief Lloyd's decision not to promote him. He also claims discrimination based upon his dyslexia, a reading disability. See 21 V.S.A. § 495d(5) (defining handicapped individual) & (6) (defining qualified handicapped individual).

In support of his claim of religious discrimination, plaintiff submitted the deposition of Rutland City Alderman John Cassarino, who testified to a conversation with Chief Lloyd:

> [Cassarino]: I asked [Chief Lloyd] what was going on with Ray, and [he] told me that there was some problems with Ray. . . . And Ray was involved in his religion. He was watching PTL or 700 Club all the time, and the guys were sort of making fun of that, and he wasn't really commanding. He didn't say it in so many words, but he insinuated it. He wasn't going to get any respect because of this he also told me at that time.
>
> Q. Can you recall exactly what was said about his religion or about his –
>
> A. Well, that he was watching that on TV down there, and I understand that, and I did say that part of the reason Ray was watching it on TV is because of his reading problem . . . .

In addition, plaintiff submitted Chief Lloyd's answers to plaintiff's interrogatories. In those answers, Chief Lloyd recounted the same conversation:

> Chief Lloyd informed Chairman Cassarino that the most qualified applicant had been appointed to the posted officer's position and that the plaintiff had not demonstrated he had developed the leadership knowledge and qualifications necessary to assume this position. . . . It was also explained to Mr. Cassarino that the plaintiff had a great deal of free time at the station, and most of his free time was spent watching TV. Chief Lloyd further stated that the free time could be used in a more constructive manner by the plaintiff if he were to . . . prepare himself for future officer vacancies.

The trial court found Mr. Cassarino's testimony to be insufficient evidence of religious discrimination, but that it did call into question plaintiff's ability to assume an effective leadership position if other fire department employees did not respect him. Notwithstanding

other possible inferences that could be drawn from this testimony, it does support plaintiff's contention that Chief Lloyd unlawfully took into account plaintiff's religious practices in evaluating plaintiff for promotion and created a genuine issue of fact sufficient to go to a jury.

Chief Lloyd's interrogatory answers indicate that "leadership" was one qualification for the officer's position. One could readily infer from the Chief's interrogatory answers and Cassarino's testimony that the Chief believed plaintiff lacked leadership qualities and was unsuitable for the lieutenant's position because the other firefighters would not respect plaintiff *because of his religious practices.* An employer may not consider its employees' animosity toward a protected class in making an employment decision. This is precisely the kind of discriminatory decision-making VFEPA was enacted to prevent. The deposition testimony and interrogatory answers create a genuine issue of fact regarding whether Chief Lloyd considered plaintiff's religious practices or beliefs in passing over plaintiff for promotion.

With respect to the claim of disability discrimination, Alderman Cassarino testified that he had discussed plaintiff's dyslexia with Chief Lloyd. When asked by counsel whether Chief Lloyd mentioned anything about plaintiff's ability to read, Cassarino replied:

> We discussed that specifically, and I think this is the part that's really got me a little bit, because I asked Chief Lloyd, and he told me that he was going to pick a lieutenant and that the next lieutenant would be the chief – or the assistant chief in time . . . so he felt it was very important that the next person he pick[ed] would be his person. And *one of the reasons he wasn't going to pick Ray was because of that* . . . . [T]his person would have to be able to have the ability to do a lot of book work . . . and [Chief Lloyd's] comment was that he would hate to see Ray because of his learning disability, his inability to read, on the spot . . . .

(Emphasis added.) Cassarino's testimony creates a strong inference that Chief Lloyd considered plaintiff's dyslexia in making the promotion decision. Although Chief Lloyd may have considered plaintiff's disability for benevolent reasons, VFEPA makes such consideration impermissible in most instances.

The VFEPA defines a handicapped individual as one who "has a physical or mental impairment which substantially limits one or more major life activities." 21 V.S.A. § 495d(5)(A). To prove discrimination under the Act, plaintiff must show he is a "qualified handicapped individual," that is, one "who is capable of performing the essential

functions of the job or jobs for which he is being considered with reasonable accommodation to his handicap." *Id.* § 495d(6); see also *id.* § 495d(12) (defining reasonable accommodation).

Plaintiff submitted the deposition of Patricia Stone, an expert in evaluating reading disabilities, who testified that plaintiff has dyslexia and reads unfamiliar words at a second-grade level. She testified that plaintiff has a higher ability to recognize common words, probably due to memorization. Stone testified that, with accommodations, plaintiff could qualify to perform a job requiring high-school-level reading skill. Plaintiff also submitted the affidavit of Chester Brunell, a retired deputy chief of the Burlington Fire Department, who stated that in his experience, the occasions necessitating reading are rare. Plaintiff contends, therefore, that he is a "qualified handicapped individual," and able, with reasonable accommodations, to perform the tasks required of a fire lieutenant.

On both the religious and disability discrimination claims the trial court found that plaintiff had failed to demonstrate that his lack of promotion was due to discrimination, and that he possessed the minimum qualifications required for the position of lieutenant. We disagree. Plaintiff has provided sufficient evidence to support a prima facie case of discrimination on both claims. There being deposition, affidavit and other evidence advanced by plaintiff to create genuine issues of fact on his claims of religious and disability discrimination, we reverse summary judgment on these issues.

### B.

Plaintiff need not succeed on the merits of his discrimination claims in order to be protected from retaliatory action by defendants. See *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986) (finding of unlawful retaliation not dependent on merits of underlying discrimination charge). A prima facie case for retaliatory discrimination requires plaintiff to show that (1) he was engaged in protected activity, (2) his employer was aware of that activity, (3) he suffered adverse employment decisions, and (4) there was a causal connection between the protected activity and the adverse employment action. *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

The filing of a complaint under the VFEPA with the Attorney General is a protected activity. See 21 V.S.A. § 495(a)(5) (employer may not retaliate against employee for filing discrimination complaint with Attorney General); see also *EEOC v. Locals 14 & 15, Int'l Union*

*of Operating Eng'rs,* 438 F. Supp. 876, 881 (S.D.N.Y. 1977) (filing of EEOC charges alleging retaliation is "protected participation" under Title VII). The Attorney General notified defendants of the VFEPA complaint shortly after it was filed in September 1987.

Plaintiff commenced his lawsuit on January 22, 1988, and was first assigned to "detail" on January 29, 1988. The reprimand letters came in April, May and September of 1988. On "detail," plaintiff performed menial chores, such as trash-hauling and taking coffee orders, that he had not performed in ten or more years. Moreover, the reprimand letters issued to him after his VFEPA complaint and lawsuit were the first he had received in twenty-six years as a firefighter.

■ Defendants contend, however, that plaintiff has failed to present evidence of a causal link between his complaint and the allegedly retaliatory actions. For purposes of a prima facie case, plaintiff may establish a link indirectly by showing that the timing of the complaint and the retaliatory action was suspect. *In re McCort,* 162 Vt. 481, 494, 650 A.2d 504, 512 (1994). The trial court found that the first disciplinary memorandum came seven months after the filing of plaintiff's VFEPA complaint, an interval the court felt was too long to establish the necessary causal link to show retaliation. But more significant, in our view, is the fact that plaintiff had had no "detail" assignments in at least ten years, nor had he received any disciplinary memoranda in twenty-six years until *after* he had filed a complaint with the Attorney General. Cf. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1525 (11th Cir. 1991) (pronounced increase in negative reviews and careful scrutiny of plaintiff's performance, coupled with testimony that management personnel were acutely aware of EEOC charge filed by plaintiff, were sufficient to establish causal link for plaintiff's prima facie case of retaliatory discharge). Considering the evidence in the light most favorable to plaintiff, we conclude that there is a genuine issue of material fact concerning his claim of retaliatory discrimination. Summary judgment on this claim is reversed.

## IV.

■ Plaintiff contends that Chief Lloyd failed to comply with the City Charter and the City personnel regulations when he added skills and responsibilities to the job descriptions of the open positions. Chief Lloyd posted notice of a lieutenant's position vacancy in November 1985 which stated that, in addition to the requirements listed in the

City Personnel Manual, "the person selected for this position will also serve as the Traffic Light and Fire Alarm Officer. His duties will be to supervise the fire alarm and traffic system." Plaintiff asserts that this change to the job description was required to be in writing and approved by the City aldermen.

The Personnel Rules and Regulations and the City Charter, however, contain no such requirement. Indeed, the Recruitment section of the personnel manual states that in filling vacancies, a department head shall announce, among other things, "desired qualifications of applicants." Personnel Rules and Regulations § III 1.C.

Plaintiff also refers to 24 V.S.A. § 1122 for support. This section made personnel rules "personnel matters subject to regulation by local officials," *Martin v. Town of Springfield*, 141 Vt. 554, 561, 450 A.2d 1135, 1139 (1982), allowing the legislative body of a municipality to adopt rules relating to personnel matters, including promotions; the section does not, however, mandate such a procedure or make it the exclusive procedure.

We agree with the trial court that the proffered evidence is inadequate to raise a genuine issue of material fact on plaintiff's claim that Chief Lloyd failed to comply with City regulations in posting the November 1985 vacancy notice.

## V.

Plaintiff alleges further a claim for intentional infliction of emotional distress. The trial court granted summary judgment on this count because it had granted summary judgment on the retaliation claim.

Plaintiff's burden of proof on a claim of intentional infliction of emotional distress is a heavy one. He must demonstrate that defendants' conduct was so outrageous as to surpass "'all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community.'" *Demag v. American Ins. Cos.*, 146 Vt. 608, 611, 508 A.2d 697, 699 (1986) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). In addition, plaintiff must show that the conduct was undertaken intentionally or with reckless disregard of the probability of causing emotional distress, and that it did in fact result in extreme emotional distress. *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 296, 576 A.2d 441, 448 (1990).

The evidence proffered by plaintiff falls far short of that necessary to raise a genuine issue as to whether defendants' actions

amounted to intentional infliction of emotional distress. The "detail" chores to which plaintiff was assigned are, by his own admission, routine firehouse duties, though they are normally assigned to rookie or junior firefighters. Likewise, the reprimand letters cannot be characterized as outrageous conduct surpassing the bounds of decency. Plaintiff offers no other specific evidence of outrageous conduct; we therefore find no error in the trial court's ruling on this count.

## VI.

Plaintiff alleges violations of his rights under the Vermont Constitution, charging that Chief Lloyd's failure to promote him violated fundamental principles of fairness. See Vt. Const. ch. I, art. 18 (referring to accountability of officers and their duty to adhere to principles of "justice, moderation, temperance, industry, and frugality"). But plaintiff has not shown its application here. Likewise, in asserting violations of other constitutional provisions, he has failed clearly to show how his rights have been violated under Article 7, which, among other things, prohibits government action "for the particular emolument or advantage of any single man," *id.* ch. I, art. 7, or under Article 3, securing the free exercise of religion, *id.* ch. I, art. 3. We therefore will not address those issues. See *Fitzgerald v. Congleton*, 155 Vt. 283, 295-96, 583 A.2d 595, 602 (1990) (declining to address state constitutional issue where plaintiff failed clearly to delineate how her rights had been violated).

## VII.

In June 1992, plaintiff filed a motion for Judge Norton to disqualify himself and to vacate the summary judgment order in this case. Plaintiff alleged that Judge Norton's position as Rutland City Attorney from 1969 to 1976 coincided with some of the years during which plaintiff claims the Rutland Fire Department pursued a policy of promotion based on seniority. According to plaintiff, Judge Norton's prior service as City Attorney raises an appearance of allegiance or bias toward the City.

Judge Norton refused to disqualify himself, and the matter was referred to Administrative Judge Stephen B. Martin. See V.R.C.P. 40(e)(3). Judge Martin found that plaintiff had failed to meet his burden of showing bias or prejudice on the part of Judge Norton. We agree.

As we have stated on more than one occasion, it is not enough merely to show the existence of adverse rulings, no matter how erroneous or numerous, or that the judge expressed a comment or opinion, uttered in the course of judicial duty, based upon evidence in the case. See *Cliche v. Fair*, 145 Vt. 258, 262, 487 A.2d 145, 148 (1984). Judge Norton's rulings do not on their face demonstrate bias, and the fact that he served as city attorney many years prior to the events at issue herein is not sufficient by itself to warrant disqualification. *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978) (prior representation of party by judge in unrelated matter does not automatically require recusal); *Black v. American Mut. Ins. Co.*, 503 F. Supp. 172, 173 (E.D. Ky. 1980) (same). In the absence of supporting evidence of actual bias, we are unable to discern "a doubt of impartiality [that] would exist in the mind of a reasonable, disinterested observer." *Richard v. Richard*, 146 Vt. 286, 288, 501 A.2d 1190, 1191 (1985). Accordingly, the decision of the administrative judge must be upheld.

*Denial of motion for disqualification is affirmed. Reversed on claims of violations of Vermont Fair Employment Practices Act; in all other respects, the judgment of the trial court is affirmed. Cause remanded.*

**Morse, J.,** concurring and dissenting. I respectfully dissent from the reversal of the judgment dismissing the claim under the Vermont Fair Employment Practices Act for religious discrimination and the claim of retaliation. Otherwise, I concur.

The links in the circular chain of inferences the Court employs to arrive at religious discrimination are derived only from the statement of Alderman Cassarino and Chief Lloyd's answer to an interrogatory question, both quoted in the Court's opinion. According to Cassarino, Chief Lloyd insinuated, but did not say, that "the guys" "made fun" of plaintiff for "watching PTL and 700 Club all the time," and that plaintiff "wasn't really commanding." Lloyd stated plaintiff lacked "leadership" and spent most of his considerable free time at the station "watching TV" rather than constructively preparing for "future officer vacancies."

The Court assumes that watching such television during working hours is a protected religious practice. May a court take judicial notice that "PTL or 700 Club" are "religious" observances within the meaning of the Act? The Court next assumes that plaintiff's coworkers made fun of plaintiff's "religion," rather than his choice of television entertainment. The Court further assumes, based on

Lloyd's insinuation, that plaintiff was not "commanding" only because he watched a particular form of programming. Making yet another assumption, the Court states that Chief Lloyd's statement describes the same conversation that Cassarino vaguely remembers.

Chief Lloyd's statement does not remotely supply evidence of discrimination found wanting in Cassarino's deposition. The Court, nevertheless, makes a quantum leap from one statement to the other. Lloyd's observation that plaintiff's watching television during most of his free time at the station instead of working toward his promotion becomes Lloyd's assessment of plaintiff's religious observance; practicing religion fosters disrespect by coworkers; the disrespect becomes a motivating, if not sole, consideration in making the decision not to promote plaintiff. Under the Court's factual analysis, surmise leads to speculation forming a conjectural waft of religious prejudice. Summary judgment should be available to screen out such frivolous attacks.

I would also affirm the grant of summary judgment on the claim of retaliation. Plaintiff has not shown a causal connection between his complaint and the allegedly retaliatory actions. The record only indicates that plaintiff was assigned "detail" work on an average of once per month. The record does not indicate, beyond plaintiff's assertion, that plaintiff was singled out to perform this type of work. Plaintiff made no showing that only new recruits were required to perform menial tasks or that menial tasks were assigned as a form of discipline.

Nor has plaintiff shown that defendant's nondiscriminatory reasons for disciplining plaintiff were pretextual. Plaintiff complains that three reprimand letters were retaliatory because the subject of the reprimands were actions that are not normally the subject of discipline. I fail to see how insubordination, failure to respond to an emergency call in a timely fashion, nonresponse to emergency calls on two separate occasions, failure to wear proper equipment, and abuse of sick leave would not be subject to such mild sanctions. Where plaintiff had some legitimate explanation for his behavior, Lloyd accepted the explanation and took no disciplinary action. Moreover, plaintiff has introduced no evidence that other firefighters were treated differently for these same actions. By not requiring this showing, the Court assumes that these letters resulted from increased scrutiny and fails to take into account that even twenty-six year employees may misbehave after being passed over for promotion.

In my opinion, the Court's decision today, as I have discussed, encourages the practice of making spurious claims against employers and wastes the limited resources of all concerned.