Vermont Superior Court
Filed 07/16/25
Orange Unit



| VERMONT SUPERIOR COURT | CIVIL DIVISION |
| --- | --- |

Orange Unit

Case No. 25-CV-00670

5 Court Street

Chelsea VT  05038

802-685-4610

www.vermontjudiciary.org

---

## Bruce Martin et al v.  Lucas Martin et al

# ENTRY REGARDING MOTION

Title:         Motion to Dismiss; Motion ; for Mediation to be Deemed Previously Satisfied (Motion: 2; 4)

Filer:        Andrew J. Marchev; Bruce Martin; Debra Martin

Filed Date:   May 01, 2025; May 15, 2025

The motion is GRANTED IN PART and DENIED IN PART.

Defendants Lucas Martin, Samantha Walsh, and the Martin Family Farm, LLC have filed the present motion seeking to dismiss Plaintiffs Bruce and Debra Martin's complaint.  The Court finds, upon review of the pleadings and briefing that Defendant's motion goes to the factual issues in dispute on counts I, II, IV, V, and VII, and is **Denied in Part** for these claims.  The motion does, however, provide sufficient grounds for claims III, VI, VII, and IX, and their motion is **Granted in Part**, and these three counts are **Dismissed** as a matter of law.

*Standard for a Motion to Dismiss*

Dismissal for failure to state a claim upon which relief can be granted is appropriate "where there exist no facts or circumstances that would entitle the plaintiff to relief." *Amy's Enterprises v. Sorrell*, 174 Vt. 623, 623 (2002). The Court must assume that all factual allegations contained in the complaint are true. *Richards v. Town of Norwich*, 169 Vt. 44 (1999). "The purpose of a motion to dismiss for failure to state a claim is to test the law of a claim, not the facts which support it." *Levinsky v. Diamond*, 140 Vt. 595, 600 (1982) (quotations omitted), overruled on other grounds in *Muzzy v. State*, 155 Vt. 279, (1990).

*Factual Background*

Plaintiffs allege in the complaint the following material facts. Plaintiffs own a 205-acre dairy farm located at 1626 Baptist Street in Williamstown, Vermont that they leased to Defendant Martin Family Fam, LLC through an agreement (the "Lease") executed on December 29, 2022. On the same date, Plaintiffs also sold Defendant Martin Family Farm, LLC an assortment of farm machinery, equipment, and a herd of dairy cattle, through two bills of sale. Under the Lease, the Martin Family Farm, LLC was granted the right to exclusively occupy, use, and possess the farmland and buildings for the purpose of operating a dairy and livestock farm. The term of the Lease was ten years, and the rate of rent was $800 plus the costs, expenses of maintenance and repair, insurance, and other costs laid out in the Lease to maintain the property. The Lease did except the horse barn and horse

pens from this exclusive right of occupancy as well as providing a way for the parties to share other areas, if they reached a separate agreement.

None of the documents submitted by Plaintiffs indicate that either Defendants Lucas Martin or Samantha Walsh were named as parties or guarantors on the Lease or parties to the two bills of sale. Both Lucas Martin and Samantha Walsh are alleged to be owners of Martin Family Farm, LLC.

On December 17, 2024, the Plaintiffs mailed to the Martin Family Farm, LLC and its owners a notice of termination. The notice alleged the following:[1]

1) Breach of the Lease by Defendant Martin Family Farm, LLC, ending its Organic Dairy Contract.

2) Breach of Section (7) of the Lease by not making repairs and replacement to buildings on the farm.

3) Breach of the Lease by additional damages to and failure to repair and maintain the premises.

4) Breach of the Lease by assigning a portion of the premises to a third party, Jen Lambert.

5) Breach of the Lease by failing to have Plaintiffs named as additionally insured on the Defendant's insurance policy for the farm.

---

[1] Plaintiffs' notice contains 20 numbered paragraphs. Some paragraphs contain specific allegations of breach that correspond to specific portions of the Lease. Others are more narrative and recite facts that Plaintiffs believed relevant to the termination. The list below is what the Court was able to distill from the letter as actual bases for the termination and omits the discussion on attempts as mediation offered by Plaintiffs.

6) Breach of the Lease by failing to either repair or confirm repairs to the farmhouse to address issues raised by an inspection performed by the Vermont Division of Fire and Safety.

The letter gave Defendants 30 days to vacate the property in accordance with Section 11 of the Lease. When Defendants did not vacate, Plaintiffs filed the present complaint.

*Plaintiffs' Complaint and Claims*

In their complaint, Plaintiffs list nine different causes of action against Defendants. They include: Court I (Breach of the Lease—Loss of Organic Valley Contract); Count II (Failure to Maintain and Repair Buildings and Perform Maintenance); Count III (Failure to Comply with Property Insurance); Count IV (Violation of Assignment Provision); Count V (Breach of the Covenant of Good Faith and Fair Dealing); Count VI (Fraudulent Conversion); Count VII (Unjust Enrichment); Count VIII (Intentional Infliction of Emotional Distress); and Count IX (Conversion Using Failed Promise).

For purposes of the present motion to dismiss, the Court will address these claims in the following manner. Counts I, II, III, IV, V, and IX. are contractual claims based on alleged breaches of the Lease. Count VI concerns Defendants' use of feed stored on the premises, but not included in either bill of sale, to feed the dairy herd. Count VII concerns the allegedly unauthorized use of Plaintiffs' business account to

pay Defendants' expenses.  Count VIII concerns Defendants' alleged actions to cause Plaintiffs to lose their housing.

*Defendants' Motion to Dismiss the Breach of Contract Claims*

1. Count I Breach of Contract (Cancelling the Organic Valley Contract)

Defendants contend that the first Count should be dismissed because there is no language in the parties' Lease that requires Defendants to maintain the Organic Valley contract.  While Defendants are correct that there are no provisions in the contract expressly requiring them to maintain this specific contract, the Lease states that the purpose of the contract is the "running of a dairy farm, and assorted other purposes related to supporting a dairy and livestock farming operation."[2] Plaintiffs' contention, as the Court understands, is that by cancelling the Organic Valley contract, Defendant Martin Family Farm, LLC, effectively left the dairy farming business and ceased to operate as a dairy farm.  Defendants contend otherwise, but this is factual dispute for which the factual record, at the very least, needs to be developed to understand what Defendants' activities were after the contract cancellation.  This would include what farming activities continued, what activities ceased, and what activities were modified.  For these reasons, a motion to

---

[2] This purpose is stated in both the *Preamble and Statement of Purpose* as well as Section 3.1 of the Lease.

dismiss would be inappropriate at this time, and the motion to dismiss is **Denied** as to Count I.

### 2. Count II (Failure to Maintain and Repair)

Plaintiffs' second count concerns Section 3 of the Lease and breaches that arose from Defendant's alleged failures to maintain the property. While Defendants note that the law does not require tenants to perform repairs to improve the property, Plaintiffs' complaint appears to encompass more than just normal wear and tear. Moreover, it will require the Court to go beyond the pleadings to understand the nature and condition of the property at the time of the Lease, the nature of Defendants' use, and the extent and specific damages that Plaintiffs are alleging before the Court can determine whether the damages alleged constitute a breach of Section 7 of the parties' lease. For these reasons, a motion to dismiss would be inappropriate at this time, and the motion to dismiss is **Denied** as to Count II.

### 3. Count III (Failing to Maintain Insurance)

This Count concerns an alleged breach that Plaintiffs claim arose because they allege that Defendants did not maintain the required insurance policy over the farm and herd that would name Plaintiffs as additional insureds. Defendants contend that Plaintiffs are mistaken, and that the Defendants had insurance on the

property at all relevant times, proof of which they provided to Plaintiffs in negotiations. Defendants have attached a copy of their insurance certificates that name Plaintiffs as additional insureds as part of their answer. Plaintiffs do not respond to this argument in the opposition to Defendant's motion. While a motion to dismiss is normally limited to the pleadings, a Court may consider documents referenced in the pleadings that effectively merge into the pleadings. *Wolfe v. VT Digger*, 2023 VT 50, ¶ 12. If they do not merge into the pleadings, the Court may also consider them under the rules for summary judgment. *Nash v. Coxon*, 152 Vt. 313, 314–15 (1989). In either case, the Court will allow these insurance documents as they are necessarily involved in the pleadings in this case and respond to the Lease provisions under Section 8. The insurance certificates establish that Defendants had a general liability insurance policy on the farm, a farm liability policy over the dairy operations, and a policy over the farmhouse. In all cases, Plaintiffs were named as additional insured.

In reviewing the complaint and termination letter, Plaintiffs' position is less of a definitive statement that Defendants lacked insurance and more of a presumption that there was none in place because Plaintiffs' since because their prior policy over the farm had been cancelled, and they had not received sufficient notice of a replacement policy. While this lack of notice would be reasonable cause for concern, it does not, in and of itself constitute a breach of the Lease. In light of

Defendant's undisputed production of these certificates, and the lack of any opposition by Plaintiffs, the Court finds that there are no grounds as a matter of law for Plaintiff's breach of contact claim based on allegation of Defendant's failure to maintain insurance required under the Lease. The record indicates that Defendants are in compliance with their obligations under Section 8 of the Lease. Therefore, Defendant's motion to dismiss is **Granted in Part**, and Count III is **Dismissed.**

### 4. Count IV (Violation of the Assignment)

This claim concerns Plaintiffs' allegations that Defendants breached the lease by assigning portions of it to third-party to use the dairy barn and facilities. Defendants contend that there has been no assignment of the Lease. While they do not deny making an agreement with a third-party, they argue that the agreement was only a sublet the property for a limited period of time, and that all rights and responsibilities under the Lease remain with them. In this respect, Defendants focus their argument on the distinction between an assignment and a sublease. They contend the former is prohibited under section 9 of the Lease, but the latter is permitted in the absence of any restriction to the contrary. Courts have distinguished between assignments and subleases and have allowed the latter even when there is language restricting the former. See *Rocklen. Inc. v. Radulesco*, 522 A.2d 846, 849 (Ct. App. 1987) ("The basic distinction between an assignment and a sublease is that by the former, the lessee conveys his whole interest in the

unexpired term, leaving no reversion in himself; the latter transfers only a part of the leased premises for a period less than the original term.").

There are two problems with Defendant's position. First, the Restatement (Second) of Property notes that the freedom to transfer leasehold interest through either a sublease or assignment may be inherently limited where the lease envisions the tenant to perform significant personal services. RESTATEMENT (SECOND) OF PROPERTY, LANDLORD & TENANT § 15.1(2), cmt. c (2024 update). As the Restatement notes:

> If the landlord's expectations under the lease as to personal services of the tenant may be fulfilled only by a person with the special qualifications of the tenant, and the special qualifications were a primary motivation for the landlord to enter into the lease with that particular tenant, the landlord is entitled to have the person of his choice continue as the tenant. In such situation, the interest of the tenant in the leased property is not transferable without the consent of the landlord, but, of course, the lease could provide otherwise.

Id. Given the language in the Lease concerning the purpose and intent of the Lease to allow Defendants to establish a dairy farming operation, this issue presents a factual issue that will require more development by the parties to understand their intent and whether Defendants were specially selected to perform this service as well as whether the third-party sublease interfered or displaced those obligations.

Second, even if the Court were to apply the assignment/sublease distinction, there is an issue of factual development. Neither the complaint nor Defendants' motion lay out the nature of the subtenancy. Some of the information indicates that this was a short-term arrangement, but until the parties have established evidence showing whether the subtenant was or was not in control of the farm and all dairying operations, the nature of her sublease, and confirmation that the sublease has ended and is of no further effect, any motion to dismiss is premature.

For these reasons, a motion to dismiss would be inappropriate, and the motion to dismiss is **Denied** as to Count IV.

5. Count V (Breach of the Covenant of Good Faith and Fair Dealing)

In their complaint, Plaintiffs allege that Defendants' cancellation of the Organic Valley contract, assignment of the lease, and failure to share business records constitute a breach of the covenant of good faith and fair dealing.

The covenant of good faith and fair dealing is an implied term that is included in every contract in Vermont. *Carmichael v. Adirondack Bottled Gas Corp. of Vermont*, 161 Vt. 200, 208 (1993). The promise is that each party will not act in a manner that undermines or destroys the other's right to receive their benefits from the contract. Id. The covenant functions in a fact-specific and contextual manner to protect against behavior that violates "community standards of decency, fairness

or reasonableness." Id. at 208–09 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205, cmt. a (1981)).

Given the fact-specific nature of such claims, the Court cannot as a matter of law rule out the possibility that the actions cited by Plaintiffs are more than just breaches of the contract. Plaintiffs allege that Defendants sought to undermine the intent and purpose of the agreement through the changes and decisions that they made. While Defendants dispute whether some of these changes occurred, whether they have the impact that Plaintiffs imply, and even Defendants' intent, the Court is not in a position to weigh or determine if these actions are as harmless as Defendants contend them to be.

Furthermore, while neither party has acknowledged this in their filings, it is readily deducible that the parties are related, and there is some implication that Plaintiffs were retiring from dairy farming and turning over the business to a family member. In such a case, the Court could foresee that if Defendants agreed to such a transition and obtained favorable terms but then acted to radically alter the farming business, then they could conceivable have acted in a manner to undermine the transaction. Given that such a scenario is possible and would violate the covenant of good faith and fair dealing, dismissal, as a matter of law, is inappropriate at this juncture.

While the Court does not make a finding that such actions occurred, the plausible development under the facts is sufficient to allow Plaintiffs' claims to continue. For these reasons, a motion to dismiss would be inappropriate, and the motion to dismiss is **Denied** as to Count V**.**

6. Count VI (Conversion of Animal Feed)

In this claim, Plaintiffs claim that the feed stored in the barn was not intended to go to Defendants. The claim of conversion, as Defendants note, require Plaintiffs to establish (1) that they own the property; (2) that Defendants appropriated the property; and (3) that the Defendants exercised dominion over it in exclusion and defiance to the owner's right. *Montgomery v. Devoid*, 2006 VT 127, ¶ 12.

In looking at the facts as pled, the Court finds there is nothing in either the Lease or bill of sale expressly discussing the feed, but the documents do indicate (1) that Plaintiffs were transferring their herd of cattle to Defendants and not retaining any cattle; (2) were transferring possession and use of all premises (including the barn where the cattle feed was stored); and (3) were setting up an agreement to establish Defendants as the new operators of the dairy farm. All of these facts suggest that the cattle feed was to be included in the transfer. Moreover, Plaintiffs do not allege that Defendants refused to allow them to remove the feed or thwarted any effort to use or sell the feed. It was neither wrongful or

contrary to the parties' agreement that Defendants would exercise control of the barn and use the equipment and materials found within the barn for the stated purposes of the agreement.

Plaintiffs do not allege or include any allegations that the feed left in the barn was intended to be retained by Plaintiffs or held separate from the parties' larger agreement. Plaintiffs' reliance on the absence of an express term of transfer does not, by itself, give rise to a claim of conversion. Plaintiffs would need to allege some wrongdoing by Defendants to establish a claim of conversion that would show wrongful dominion or exclusion under the third prong of a conversion claim. *Montgomery*, 2006 VT 127, at ¶ 12. Absent such allegations, this claim fails as a matter of law. Based on this, Defendants' motion to dismiss is **Granted in Part,** and Claim VI is **Dismissed.**

7. Count VII (Unjust Enrichment)

The nature of this claim is based on the allegation that Defendants took control of milk funds that should have gone to Plaintiffs. As Defendants note in their motion to dismiss, there is some ambiguity in Plaintiffs' pleadings regarding the timing of the Organic Valley contract and Plaintiffs' transfer of the farming operations to Defendants. For the purpose of the pleading, however, Plaintiffs' claim is fairly clear. They believe they are entitled to some of the Organic Valley

funds, which Defendants have spent. Plaintiff have posited that they are either entitled to these funds by contract or because it represents their work, and it would be inequitable to deprive them of the value of this revenue. Under Vermont's notice pleading standards, this is sufficient to make out a claim for these funds. *Bock v. Gold*, 2008 VT 81, ¶ 4 (discussing Vermont's notice pleading standards).

Defendants' objections look to narrow the factual basis of Plaintiffs' claims in this area, and as such, they are ripe for discovery and possibly a motion for summary judgment. For purposes of the present motion, Defendants do not point to any undisputed factual basis that would show that (1) the Organic Valley contract and any revenue in the business account post-dated the parties' transfer and (2) that none of the funds claimed by Plaintiffs were related to work done by Plaintiffs for which they might reasonably entitled to an equitable claim. *Hirchak v. Hirchak*, 2024 VT 81, ¶ 26 (outlining the elements of an unjust enrichment claim).

For purposes of the present motion, however, the Court cannot, on the present record, dismiss Plaintiffs claims as a matter of law. Therefore, a motion to dismiss would be inappropriate, and the motion to dismiss is **Denied** as to Count VII.

8.  Count VII (Intentional Infliction of Emotional Distress)

The basis for Plaintiffs' claim of Intentional Infliction of Emotional Distress concerns actions that Plaintiffs attribute to Defendants regarding the foreclosure of their home in 2024.  These facts involve allegations that Defendants cancelled Plaintiffs' homeowner insurance, sent texts that alienated other members of the parties' extended family to shun Plaintiffs, and that Defendants affirmatively hoped that Plaintiffs would lose their home.

As Defendants note, a key element of an Intentional Infliction of Emotional Distress claim requires allegations of "outrageous conduct."  *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10.  The Vermont Supreme Court has noted that outrageous conduct must demonstrate extreme and shocking behavior.

> Plaintiff's burden of proof on a claim of intentional infliction of emotional distress is a heavy one.  He must demonstrate that defendants' conduct was so outrageous as to surpass "'all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community.'"

*Gallipo v. City of Rutland*, 163 Vt. 83, 94 (1994) (quoting *Demag v. American Ins. Cos.*, 146 Vt. 608, 611 (1986) and RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).  In this respect, the key issue is not a party's intent, but the nature of the actions.  RESTATEMENT (SECOND) OF TORTS § 46 cmt. d ("Generally, the case is one in

which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"). While the question of outrageous conduct is a fact-specific one, it is the Court's role to conduct an initial review determine if the alleged behaviors may "reasonable be regarded as so extreme and outrageous as to permit recovery." Id. at cmt. h.

In this case, the facts recited by Plaintiffs do not constitute outrageous acts. If established, the alleged actions could be deemed to be mean and heartless, but they do not shock the conscience or constitute behavior beyond all possible bounds of decency. They are, unfortunately, enough common to families in conflict, but they do not represent shock or atrocious behavior.

For these reasons, Defendants' motion to dismiss is **Granted in Part,** and Claim VIII is **Dismissed.**

### 9. Count IX (Conversion Using False Promises)

Plaintiffs' final claim concerns what they allege are various failures by Defendants to perform on promises given in the parties' Lease and Bills of Sale. Specifically, Plaintiffs allege that Defendants failed to continue the dairy farming obligations that were the purpose of the transfer. This claim is nearly identical in substance to Plaintiffs' first breach of contract count, which relies on the allegation that Defendants failed to maintain and operate the dairy farm by cancelling the

Organic Valley contract.  As explained above, the Court understands that this first count addresses the dairy farming purpose in the parties' Lease.

The problems with Plaintiffs' final count is that by couching these issues under the claim of conversion, the documents filed with the Court do not demonstrate that Plaintiffs had any ownership or claim of title in the cattle or farm equipment.  The bills of sale contained in Plaintiffs' complaint do not state any conditions on the sale of the cattle and equipment to Defendants.  None of the cited documents limit Defendants' ability to sell, trade, or otherwise use the livestock and equipment as they saw fit.  Unlike the Lease that has express language concerning the purpose and intent, there is no such language concerning the cattle or equipment.  To the extent that Plaintiffs allege that there was such language implied in the transaction, Plaintiffs' claim would be for a breach of contract, not conversion, and it would be controlled by the language reasonable drawn from the bills of sale that transferred titles of the cattle and equipment.  *Prue v. Royer*, 2013 VT 12, ¶ 20 (noting that title documents control the terms and conditions of property transfers and trump any implied or oral intent).

Conversion, as Defendants correctly note, begins with allegations and evidence that Plaintiffs owned the property, that Defendants appropriated the property, and that the appropriation was in exclusion and defiance of Plaintiffs' rights.  *Montgomery*, 2006 VT 127, at ¶ 12.  In this case, Plaintiffs' have provided no

credible allegation that they had an ownership interest in the cattle or equipment following the execution of the bills of sale.  For these reasons, Defendants' motion to dismiss is **Granted in Part,** and Claim IX is **Dismissed.**

*Remaining Issues*

Based on the Court's decision, there are several issues that need to be resolved.  First, it is not clear which claims correspond to which Defendants.  The breach of contract claims would appear to only extend to the Martin Family Farm, LLC as this Defendant was the only party to the various Leases and Bills of Sale.  Given that several of Plaintiffs' non-breach of contract claims have survived the motion to dismiss, the parties need to clarify this issue.

The Court also recognizes that there is an issue of discovery still pending, which must be completed before a motion for summary judgment becomes appropriate.  The Court notes that Plaintiffs have filed a motion for summary judgment.  This motion does not facially comply with the standards of Rule 56, which requires the moving party to file a statement of undisputed material facts separate from any legal argument.  This statement must make specific references to either documents in evidence or admissible materials, such as affidavits, depositions, pleadings, or admissions.  V.R.C.P. 56(c); *Cassani v. Hale*, 2010 VT 8, ¶ 20.  If the parties have also not completed discovery, then summary judgment is

likely not appropriate. *Doe v. Doe*, 172 Vt. 533, 534–35 (2001) (mem.) (ruling that summary judgment was premature before the responding party had an opportunity to complete discovery).

Finally, there is the issue of mediation. Plaintiffs have filed a motion seeking to set aside the mediation requirement under V.R.C.P. 16.1 based on their pre-complaint mediation. The Court is not persuaded that this requirement has been fully satisfied. In light of the Court's ruling on Defendants' motion to dismiss, it would appear at a minimum that the earlier mediation did not include the entire universe of claims that Plaintiffs presently seek to assert, and the case is now in a different posture in light of the Court's current ruling, which has struck several of Plaintiffs claims but has allowed others to continue.

In light of this landscape, the Court finds that the next logical step is to set this matter for a status conference with the parties to take up the issues of discovery, identification of which claims lie against which Defendants, the role a second mediation could play, and the timing and formatting of any motions for summary judgment.

## ORDER

Based on the foregoing, Defendants' Motion to Dismiss is **Denied in Part** as to Plaintiffs' claims under Count I, II, IV, V, and VI. It is **Granted in Part** against

Plaintiffs' claims under Count III, VII, VIII, and IX.  These four Counts are **Dismissed** for the reasons stated in this Order.

The Court will set this matter for a 30-minute status conference at its next available date to take up the discovery, mediation, and motion practice issues discussed in this decision.   At that time, the Court will take up Plaintiffs' motion to dismiss the parties from any further mediation.

Electronically signed on 7/14/2025 2:11 AM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge